In re Ben & Suzan PORTER, Debtors.

**WASHINGTON STUDENT LOAN GUARANTY ASSOCIATION, Appellants,**

v.

**Ben & Suzan PORTER, Appellees.**

**BAP No. WW–88–1580–JRA.**
**Bankruptcy No. 88–31343–T.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 18, 1989.

Decided Aug. 11, 1989.

Roslyn Solomon, Davis Wright & Jones, Seattle, Wash., for appellants.

Ben Porter, Olympia, Wash., pro se.

Before JONES, RUSSELL and ASHLAND, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

Washington Student Loan Guaranty Association appeals a bankruptcy court order confirming the Debtors' Chapter 13 plan on grounds that it was not filed in good faith, was not of an appropriate duration and because the Debtors' are not the type of individuals Congress sought to provide with the superdischarge of guaranteed student loans. We AFFIRM.

## FACTS

Between 1980 and 1982, Ben Alexander Porter, a law student at the University of Puget Sound Law School, executed three promissory notes and disclosure statements promising to pay Old National Bank the principal sum of $15,000 plus interest at the rate of 7% per annum for three separate student loans. The Washington Student Loan Guaranty Association ("Creditor"), a nonprofit corporation under contract with the U.S. Department of Education, guaranteed payment of these loans.

The notes became due in October 1983, ten months after Mr. Porter graduated from Law School. Mr. & Mrs. Porter ("Debtors") defaulted on the loans and Old National Bank demanded that the Creditor pay on its guaranty. The Creditor complied. The current outstanding balance due the Creditor is approximately $19,-378.00.

The Debtors filed a Chapter 13 petition on March 31, 1988. The Debtors own only exempt assets. Ben Porter is assistant regional counsel for the U.S. Department of Health/Human Resources. Suzan Porter is a fulltime homemaker caring for the Debtors' two children. The Debtors' net monthly income is $2044.40. The Chapter 13 Trustee and the Debtors prepared a

monthly budget of $1262.10. The balance of the Debtors' income, $782.00, plus any future sources of income, are dedicated to the plan for payment to secured creditors at the rate of 100% and to unsecured creditors at the rate of 45–50% of claims. The plan provides that all disposable income is to be paid to creditors over a 36 month period.

The Creditor objected to the confirmation of the Debtors' proposed Chapter 13 plan on the grounds that the plan was not filed in good faith, does not provide for adequate payments, and does not comply with policy considerations underlying the Bankruptcy Code. The Creditor urged that the plan be extended to a full five years as permitted under 11 U.S.C. § 1322(c). The court below denied the Creditor's objection to confirmation and request for extension of the plan.

### ISSUES PRESENTED

1.  Whether the Debtors' Chapter 13 Plan was proposed in good faith.
2.  Whether the court erred in refusing to extend the Debtors' plan beyond the thirty-six month period.
3.  Whether legislative history indicates that Congress sought to exclude certain types of debtors from the guaranteed student loan discharge provisions of the Bankruptcy Code.

### STANDARD OF REVIEW

Whether the bankruptcy court erred in finding that the Debtors proposed their Chapter 13 plan in good faith is subject to the clearly erroneous standard of review. Bankruptcy Rule 8013; *In re Slade*, 15 B.R. 910, 911 (9th Cir. BAP 1981). Statutory construction is reviewed *de novo. In re Klein*, 57 B.R. 818, 819 (9th Cir. BAP 1985).

### DISCUSSION

On appeal, the Creditor argues that it is clear the court erred in confirming the Debtors' plan. In support of this position, the Creditor contends that the Debtors' plan was not filed in good faith, the dura-

tion of the plan is insufficient, and policy considerations militate against confirmation of the plan.

### A.  *Good Faith*

■ The Creditor argues that the Debtors' plan was not filed in good faith as required under § 1325(a)(3) of the Bankruptcy Code. Section 1325(a)(3) provides that a bankruptcy court shall confirm a plan if it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Bankruptcy courts must "determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan." *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982). The scope of the good faith inquiry should be broad. *Id.* at 1390, n. 9.

The Ninth Circuit has formulated a list of several factors, the presence of which may indicate bad faith. A bankruptcy court must examine:

> Whether the [debtors] acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good faith determination in the light of *all* militating factors.

> We do not attempt at this time to compile a complete list of relevant considerations. Rather, bankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan.

*Goeb*, 675 F.2d at 1390. However, these factors are not exclusive in determining the presence of good or bad faith.

■ Further, legislative history implies that a debtor's repayment program should be related to the debtor's ability to make payments out of future income. *In re Slade*, 15 B.R. 910, 912 (9th Cir. BAP 1981). In addition, "nominal repayment [may be considered as] one piece of evi-

dence that the debtor is unfairly manipulating Chapter 13 and therefore acting in bad faith." *Goeb*, 675 F.2d at 1396. However, despite the consideration of nominal repayment as evidence of bad faith, there is no substantial repayment requirement in the Ninth Circuit. *Id.* at 1389. Finally, it should be noted that Chapter 13 was designed with an emphasis on debt repayment. *Slade*, 15 B.R. at 912.

■ The Bankruptcy Appellate Panel, in *In re Warren*, 89 B.R. 87 (9th Cir. BAP 1988), recently discussed the good faith standards accompanying the filing of a Chapter 13 plan. More specifically, that case dealt with discharge under Chapter 13 of debts not afforded discharge under Chapter 7. In *Warren*, the debtor converted his Chapter 7 to Chapter 13 after a creditor filed an adversary proceeding to determine the dischargeability of his debt. After a thorough discussion of the legislative history behind Chapter 13, the *Warren* Panel determined that a court must conduct more than a ministerial review of payments to make an informed and independent judgment concerning whether a plan was proposed in good faith. *Warren*, 89 B.R. at 95. A bankruptcy court should pay particular scrutiny to the debtor's good faith when the plan proposes nominal repayment and a nondischargeable debt is present. *Id.* at 94.

While the bad faith inquiry in the Ninth Circuit is centered on whether a debtor acted equitably, bankruptcy courts in other circuits have considered additional factors. These factors include: (1) the nature of the debt and whether such debt is dischargeable in a Chapter 7, *In re Williams*, 42 B.R. 474 (Bankr. E.D.Ark.1984) (court held proposal to pay back 37% of student loan demonstrated bad faith because, but for the financial assistance, the debtor would not have her degree and, presumably, would not enjoy her current income); (2) whether debtor's dominant purpose is discharge of an otherwise nondischargeable student loan, *In re Makarchuk*, 76 B.R. 919, 923 (Bankr. N.D.N.Y.1987) (Chapter 13 plan proposing to pay 48% of otherwise nondischargeable student loan debt was

not proposed in good faith where dominant purpose of filing was to obtain partial discharge); (3) the amount of the proposed payment, *In re Nkanang*, 44 B.R. 955, 958 (Bankr. N.D.Ga.1984) (payments should be commensurate with debtor's ability to pay and payment is insufficient if debtor is permitted to discharge a guaranteed student loan while maintaining a comfortable middle class lifestyle without making substantial efforts to repay unsecured debts); and (4) the expected duration of the plan, *In re Todd*, 65 B.R. 249, 252 (Bankr. N.D. Ill.1986) (where "a Chapter 13 plan involves a debt which potentially would be nondischargeable in a Chapter 7, courts have found that to be adequate cause to extend plans beyond three years.").

■ The Creditor asserts that the Debtors did not file their plan in good faith because this particular debt enabled the Debtors to attain their current standard of living and, as an educational debt, it is nondischargeable in a Chapter 7. As noted above, some bankruptcy courts consider the nature and dischargeability of a debt in making good faith determinations. *See, e.g.*, *Williams*, 42 B.R. at 476; *Nkanang*, 44 B.R. at 958. However, nondischargeability alone is not determinative of bad faith. *In re Gregory*, 705 F.2d 1118, 1121 n. 4 (9th Cir.1983). Additionally, it is important to note that Congress intended student loans to be dischargeable under Chapter 13 even though they are not dischargeable in a Chapter 7. *See*, 11 U.S.C. § 523(a)(8) and 1328(a); *In re Klein*, 57 B.R. 818, 820 (9th Cir. BAP 1985); *In re Lee*, 71 B.R. 833 (Bankr.N.D.Ga.1987). In this case, the Debtors have dedicated all disposable income to the plan and do not enjoy an exorbitant standard of living. Accordingly, inclusion of this debt in the plan is not necessarily evidence of bad faith.

Next, the Creditor argues that the amount of the payments the Debtors propose to make under their plan is indicative of bad faith. In support of its position, the Creditor argues that although the Debtors' plan proposes to pay 45–50% of their student loans, the Debtors have not considered any lifestyle changes that would increase

their income and enable them to make larger contributions to the plan. The Creditor argues that the Debtors' failure to provide for greater payment renders the proposed payment nominal.

Section 1325(a)'s good faith requirement is supplemented by section 1325(b) which provides that if an unsecured creditor objects to the confirmation of the plan, then the court may not approve the plan unless all of the debtor's projected disposable income for three years is applied to the plan. 11 U.S.C. § 1325(b)(1). *See In re Metz,* 820 F.2d 1495 (9th Cir.1987). That section goes on further to define "disposable income" as including all income "not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependant of the debtor...." 11 U.S.C. § 1325(b)(2). Finally, even though there is no substantial repayment requirement in the Ninth Circuit, nominal repayment may be evidence of bad faith. *Goeb,* 675 F.2d at 1396. Here, the Debtors have alloted all net disposable income, including future raises, tax refunds, and future miscellaneous income to the plan. The Creditor does not contend that the Debtors have failed to meet the net disposable income requirement. It is apparent they have met the requirement. Rather, the Creditor only argues that the Debtors have not made any lifestyle changes. Beyond this assertion, however, the Creditor has not attacked the sum which the plan retains for the maintenance of the Debtors' family, or shown how disposable income can be increased. Therefore, the Creditor has not established the existence of bad faith by nominal repayment.

Finally, the only absolute minimum payment required under Chapter 13 is the amount that would be paid if the estate of the debtor were liquidated under Chapter 7. As the Creditor does not allege and establish that it would receive more in a Chapter 7 liquidation, the Creditor's bad faith argument is unpersuasive.

Here, the record indicates that the bankruptcy judge reviewed all factors and fairly determined there was good faith. In this case, nominal repayment is not at issue.

There is no allegation that the Creditor is being paid less than what it would receive in a Chapter 7 and there are no *Warren* facts where the debtor converts the case after an adversary objecting to discharge is filed.

### B. *Duration of the Plan*

■ Next the Creditor contends that the Debtors' plan does not provide for payment over an adequate period of time. Section 1322(c) governs the duration of plans and provides that a plan may be extended up to five years if the court determines that there is cause to do so. However, the code indicates that three year plans are preferred as court approval is necessary for any longer period. 11 U.S.C. § 365(c). The Creditor argues that sufficient cause exists to extend the Debtors' plan to five years. Although cause is not defined in the Code, bankruptcy courts have extended Chapter 13 plans to five years where a large portion of the debtor's obligations consist of nondischargeable debt, such as guaranteed student loans. *See, e.g., In re Todd,* 65 B.R. 249, 252 (Bankr.N.D.Ill.1986); *In re Williams,* 42 B.R. 474 (Bankr.E.D.Ark. 1984). In the immediate case, it is the Creditor who urges the court to extend the plan beyond the statutorily preferred 36 month period.

■ A review of the case law indicates that there is a split of authority on whether an entity other than the debtor may extend a plan beyond three years. We believe that the better reasoned view is that debtors must *voluntarily* choose to extend their plan beyond three years. *See, e.g., In re Pierce,* 82 B.R. 874 (Bankr.S.D.Ohio 1987); *In re Greer,* 60 B.R. 547 (Bankr.C. D.Cal.1986); *see also In re Karayan,* 82 B.R. 541 (Bankr.C.D.Cal.1988); *In re Robertson,* 84 B.R. 109 (Bankr. S.D.Ohio 1988); *but see In re Todd,* 65 B.R. 249 (Bankr. N.D.Ill.1986); *In re Williams,* 42 B.R. 474 (Bankr.E.D.Ark.1984). This is so because Chapter 13 was "designed and enacted as a vehicle for voluntary repayment with future income through composition and/or extension of debts." *Warren,* 89 B.R. at 91 *citing In re Iacovoni,* 2 B.R. 256, 263

778

(Bankr. D.Utah 1980). As noted by the court in *Pierce:*

> Certainly, the court does not believe that assuming compliance of the confirmation criteria contained in § 1325, debtors should be required by the court, the trustee and any other party to extend their plans beyond three years.... Such a requirement would, in fact, be tantamount to involuntary servitude.

*Pierce,* 82 B.R. at 883. Absent some compelling reason and as long as debtors meet the requirements of § 1325, they should not be forced to pay into a plan that extends beyond three years. In this case, there has been no evidence of bad faith or noncompliance with § 1325, and the Debtors have not voluntarily sought to extend their plan. Thus, we find no cause to extend the Debtors' plan beyond three years.

### C. *Policy Considerations*

■ Finally, the Creditor argues that policy considerations underlying the Bankruptcy Code and the guaranteed student loan program militate against confirmation of the Debtors' plan. The creditor asserts that the Debtors are the type of individuals Congress sought to exclude from the discharge provisions of the Code and that unlike individuals who suffer from serious and permanent disabilities or do not hold well-paying jobs, Mr. Porter is a healthy, trained professional who benefitted from the education his loans helped finance. However, the Creditor has failed to show that the Debtors' income will increase significantly during the three year plan period. Further, the Debtors have dedicated all disposable income to the plan. The Bankruptcy Code does not require more.

### CONCLUSION

Even though the good faith inquiry is quite broad and many factors may be considered, the Creditor failed to present evidence to the bankruptcy court which would justify a finding of bad faith. The bankruptcy court fairly considered all of the appropriate factors and simply found that there was no bad faith. That finding is not clearly erroneous. The Debtor is making an attempt to pay some of the debt, the final dividend may be as high as 50%, and no other indicia of bad faith exist. Accordingly, we AFFIRM the court below.