**In re Victoria STRAUSSER, Debtor.**

**No. 96–13870 B.**

United States Bankruptcy Court,
W.D. New York.

March 14, 1997.

Barry Sternberg Law Offices (Janet Mac-Donald, of counsel), Amherst, NY for Debtor.

Albert J. Mogavero, Buffalo, NY, Chapter 13 Trustee.

CARL L. BUCKI, Bankruptcy Judge.

In this Chapter 13 proceeding, the debtor has proposed the confirmation of a plan that would pay a co-signed loan in full but only five percent on account of all other unsecured obligations. As a consequence, most of the unsecured creditors would receive less than under a plan in which all such creditors share equally in distributions from the debtor's disposable income over a period of three years. At issue is the debtor's contention that the prohibition of section 1322(b)(1) against unfair discrimination does not apply to the obligations of a co-signor. Alternatively, she suggests that the different treatment is fair under the facts of the present case.

Victoria Strausser, the debtor herein, filed a voluntary petition for relief on September 3, 1996. Her schedules acknowledge general unsecured claims totaling $5,561.16, in addition to the unsecured portion of two automobile loans. Without real property, Ms. Strausser possesses no significant assets other than the automobiles, each of which secures debts exceeding their fair market value. Her plan proposes to surrender one of the cars, but to retain a 1989 Plymouth Sundance that is valued at $2,250. ACSI, the creditor holding a lien on that collateral, is therefore deemed to possess a secured claim for the car's value and an unsecured claim for the balance of approximately $5,300. If this deficiency were to receive the same treatment as all other unsecured claims, Ms. Strausser's disposable income would compel a distribution of at least 19 percent. However, an uncle of the debtor has guaranteed the ACSI obligation. It is to protect this family member that Ms. Strausser proposes full repayment of the claim of ACSI. Preferring not to extend her plan for significantly longer than three years, she would also reduce the percentage of distribution for unsecured creditors to only five percent.

The Chapter 13 trustee has suggested that the debtor extend her plan to five years, so that she might afford both full repayment of ACSI and a 19 percent distribution to all other unsecured creditors. Contending that the 1984 amendments to the Bankruptcy Code expressly allow such discrimination as might result from the treatment of co-signed

obligations, Ms. Strausser argues that the Code imposes no requirement that she contribute her disposable income for any period longer than three years.

■ Section 1322(b)(1) of the Bankruptcy Code establishes the limits for classification of claims in a Chapter 13 proceeding. This section provides that a plan may

"designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims."

The debtor bases her position upon the language added in 1984, that being the clause that begins with the word "however". Although authorities have disagreed about the interpretation of this provision, the better view requires that no unfair discrimination result from the different treatment of co-signed obligations.

As originally enacted in 1978, section 1322(b) of the Bankruptcy Code permitted a Chapter 13 debtor to designate classes of unsecured claims if two conditions were satisfied: that the classification be "as provided in section 1122" and that the classification "not discriminate unfairly." Section 1122 provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Thus, the pre–1984 version of section 1322(b) permitted classification only of claims that were "substantially similar", and then only when the classification did not unfairly discriminate. Allowing co-signed obligations to be treated "differently", the final clause of the current version of section 1322(b) speaks only to the requirement of substantial similarity. While countermanding the concept of similarity, the notion of different treatment says nothing with respect to the prohibition against unfair discrimination. If Congress had desired to allow any unfair discrimination that might result from the different treatment of co-signed obligations, it could have amended the statute expressly to permit outcomes that were not only different, but discriminatory.

Although legislative history for the 1984 amendment to section 1322(b) is limited, it nonetheless confirms an intention to address only the requirement for substantial similarity, and not to overrule the prohibition against unfair discrimination. Neither the Senate nor House Reports for the amending statute contain any reference to section 1322(b). Rather, this portion of the amendment derives from a prior bill whose language was partially incorporated into the statute that Congress ultimately approved. Thus, the only legislative history is that contained in the senate report for that earlier bill, the Omnibus Bankruptcy Improvements Act of 1983, S. 445, 98th Cong., 1st Sess. (1983). According to the report, a majority of cases had refused to permit the separate classification of co-signed debt "on the ground that codebtor claims are not different than other claims." S.Rep. No. 98–65, pt. 14, at 17 (1983).

Although there may be no theoretical differences between codebtor claims and others, there are important practical differences. Often, the codebtor will be a relative or friend, and the debtor feels compelled to pay the claim. If the debtor is going to pay the debt anyway, it is important that this fact be considered in determining the feasibility of the plan. Sometimes, the codebtor will have posted collateral, and the debtor will feel obligated to make the payment to avoid repossession of the collateral. In still other cases, the codebtor cannot make the payment, and the effect of nonpayment will be to trigger a Chapter 7 or Chapter 13 petition by the co-debtor, which may have a ripple effect on other parties as well. For these reasons, separate classification is often practically necessary.

*Id.* The amendment, therefore, expressly allows separate classification of co-signed obligations, despite the absence of any "theoretical difference" from other claims. At no time does the report indicate any desire to address the second condition for separate classification, that the discrimination not be unfair.

This Court realizes that several learned judges view the 1984 amendment to section 1322(b) as creating an exception to the prohibition against unfair discrimination. *See In re Dornon*, 103 B.R. 61 (Bankr.N.D.N.Y. 1989) (holding that the amendment "constitutes a 'carve out' to the 'unfair discrimination' standard." *Id.* at 64); *In re Riggel*, 142 B.R. 199 (Bankr.S.D.Ohio 1992); and *In re Chapman*, 146 B.R. 411 (Bankr.N.D.Ill.1992). Nonetheless, the weight of authority confirms that different treatment must nonetheless avoid unfair discrimination. *In re Perkins*, 55 B.R. 422 (Bankr.N.D.Okla.1985); *In re Ross*, 161 B.R. 36 (Bankr.C.D.Ill.1993); *In re Cheak*, 171 B.R. 55 (Bankr.S.D.Ill.1994); *In re Gonzales*, 172 B.R. 320 (E.D.Wash. 1994); and *In re Battista*, 180 B.R. 355 (Bankr.D.N.H.1995). Particularly persuasive is the reasoning which Judge Lundin expressed in *In re Easley*, 72 B.R. 948 (Bankr. M.D.Tenn.1987):

> To give meaning to all words in the amended section, it must be true that a debtor's power to treat co-signed consumer debts 'differently' has content separate from the proscription against unfair discrimination. The awkward language is resolved by holding that all different treatments are not necessarily fair discriminations.

*Id.* at 956. Among my colleagues within the Western District of New York, the Honorable John C. Ninfo II, has similarly held that an authorized classification must nonetheless avoid unfair discrimination. *In re Husted*, 142 B.R. 72 (Bankr.W.D.N.Y.1992).

Many courts have adopted a fairness standard that has evolved from the analysis of Judge Howard in *In re Kovich*, 4 B.R. 403 (Bankr.W.D.Mich.1980). As summarized by Judge Ninfo in *In re Husted*, this test looks to the following four factors:

(1) Whether there is a rational basis for the classification;

(2) Whether the classification is necessary to the debtor's rehabilitation under Chapter 13;

(3) Whether the discriminatory classification is proposed in good faith; and

(4) Whether there is a meaningful payment to the class discriminated against.

142 B.R. at 74. In addition, Judge Ninfo urges consideration of a fifth factor, namely "[t]he difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification." 142 B.R. at 74 (quoting *In re Moore*, 31 B.R. 12, 17 (Bankr.D.S.C.1983)).

This Court agrees fully that these five factors are a useful starting point for an analysis of the fairness of a discriminatory classification of claims. As confirmed by the statutory amendment, the existence of co-signor liability provides a rational basis for the separate classification. Whether due to familial pressures or a sense of kinship obligation, Ms. Strausser might understandably feel compelled to protect her uncle from financial loss. The classification will, therefore, reduce the inclination to act outside the plan in ways that might threaten an ability to afford her program for rehabilitation. Having fully disclosed an intent to deal with a legitimate concern for her uncle, Ms. Strausser has in good faith proposed the discriminatory classification. Thus, her plan would satisfy the first three factors listed above. Rather, the troubling aspect of the discrimination relates to the fourth and fifth considerations, both of which look to adequacy of distribution from a creditor's perspective.

The essence of the proposed classification is to protect the debtor's uncle at the expense of other unsecured creditors. Looking to pay her disposable income for only 3.1 years, Ms. Strausser offers no meaningful contributions beyond what is required for confirmation under 11 U.S.C. § 1325(b)(1). In other words, Ms. Strausser seeks an extraordinary benefit with no extraordinary sacrifice, and all to the detriment of her creditors. Reflecting no special considerations that might serve as a *quid pro quo* for any diminution of distributions, the plan discriminates without fairness to the general class of unsecured claimants.

Fairness dictates that a discriminated class derive some compensation for the denial of whatever greater distribution is to be accorded to the members of a different class of similarly entitled creditors. When the dis-

criminated class is assured the same or greater distribution as would occur without the classification, sufficient recompense may flow from the mere enhancement of plan feasibility. When that normal distribution is compromised, however, the plan must substitute some other benefit whose value is reasonably commensurate with the reduction of payment. Only in this way will the plan provide a meaningful payment to the discriminated class, as envisioned by the fourth consideration identified above. As required by the fifth consideration, the substituted benefit must be at least proportional to the scope of discrimination.

Imagination permits the contemplation of instances in which a separate classification might serve some substantial rehabilitative purpose that would inure to the advantage of debtor and creditor alike. Such musings are best deferred until consideration of actual proposals for chapter 13 confirmation. Accordingly, this decision will not attempt to define the extent or type of additional benefit that would compensate a class of unsecured creditors for a reduction of distribution to a percentage less than would be received without the separate classification. Indeed, the debtor assumes a difficult burden to prove the fairness of any such discrimination, particularly when, as here, she refuses any sacrifice that is significantly greater than a contribution of disposable income over the minimum period of three years. For now, it suffices to note that Ms. Strausser's plan offers no meaningful recompense for the burden that it seeks to impose upon the class of general unsecured creditors. For this reason, confirmation of the plan is denied. If she desires, the debtor may now proceed to propose an alternative plan that would satisfy the guidelines that are set forth herein.

So ordered.