In re Donald L. GAMES & Shilo A. Games, Debtors.

Bankruptcy No. 96–03777–R33.

United States Bankruptcy Court,
E.D. Washington.

Oct. 10, 1997.

Joseph D. Harkrader, Spokane, WA, for Chapter 13 Trustee.

Vannoy Culpepper, Yakima, WA, for Debtors.

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Chief Judge.

### I. *FACTS*

Donald L. Games and Shilo A. Games are husband and wife. They have five children ranging in ages from nine years old to a baby six months old. Donald Games is employed as an ironworker by Mountain States Construction. The Debtors' home is a substantial distance from the husband's place of employment.

The Games have substantial financial problems. Their amended schedules reflect general unsecured creditors claims totaling $53,111.96 divided among 83 creditors. A number of these claims appear to arise from dishonored checks. In addition the Debtors list $11,400.00 of priority claims, $9,500.00 for back child support and $1,900.00 for criminal driving tickets. The Debtors list only one secured claim, a purchase money security interest for $2,900.00 in a 1976 Chevy pickup valued at $2,000.00.

The Debtors list $6,190.00 of personal property all of which is claimed exempt. They do not schedule any real estate. The debtors combined monthly income is $2,229.64. Their listed expenses total $1,949.00.

The Debtors filed this case requesting relief under Chapter 13. The immediate precipitating factor was the suspension of Donald Games driver's license for his failure to pay a number of both civil and criminal driving tickets. Upon the filing of this case and notification to the State Department of Licensing of that fact, Mr. Games was able to have his driving privileges reinstated.

The Debtors proposed a plan which would pay $280.00 per month for a term of 49 months. These plan payments are sufficient to pay Debtors' unpaid attorneys fees in this case of $800.00, the back child support of $9,500.00, the criminal traffic tickets of $1,900.00 and the Chapter 13 trustee fees. There is nothing for any of the other unsecured claims, whose filed claims in this case total $43,856.55.

### II. *PROCEDURAL POSTURE*

This case came before this court on its uncontested confirmation docket. The court had questions concerning the propriety of the separate classification of the criminal traffic fines and the case was set over for further hearing. At that subsequent hearing the court denied confirmation of the Debtors' plan as drafted and allowed them additional time to file an amended plan. The Debtors filed a timely motion for reconsideration of the denial of confirmation. After receipt of additional briefing from the Debtors, a hearing on this motion for reconsideration was heard by this court and taken under advisement. This memorandum is the court's decision on that motion.

### III. ISSUE

Does the Debtors' Chapter 13 plan which proposes to pay criminal traffic fines one hundred percent while paying the remainder of the general unsecured claims zero percent discriminate unfairly against the unfavored class of unsecured claimants?

### IV. *DISCUSSION*

#### A. *Duty of Independent Inquiry.*

■ Congress has directed the court to hold hearings on confirmation of Chapter 13

Plans. 11 U.S.C. § 1324. At that hearing the court must consider if the proposed plan complies with the Bankruptcy Code. 11 U.S.C. § 1325. "If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." F.R.Bk.P. 3015(f). This does not however relieve the court of its authority and duty to monitor statutory compliance even when no objection has been filed. *In re Perez,* 30 F.3d 1209, 1213 (9th Cir.1994); *In re Warren,* 89 B.R. 87, 90 (9th Cir. BAP 1988). The Court undertakes this decision in fulfillment of this duty.

### B. *The Broad Statutory Framework.*

The issues presented in this case require an analysis of the applicable bankruptcy and state statutes and their interaction as applied to the facts of this case. The court will first discuss the general bankruptcy discharge provisions as they apply to fines and penalties, then the special discharge rules as to fines and penalties in Chapter 13, and finally the applicable state law provisions and their interrelation with the Bankruptcy law.

### 1. *Chapter 7 Discharge Provisions.*

11 U.S.C. § 523(a)(7) sets forth the exceptions to discharge for all chapters except Chapter 13, with regard to fines. By virtue of that provision, debts which are for 1) fines, penalties and forfeitures, 2) payable to a governmental unit and 3) are not compensation for pecuniary loss are excepted from discharge.

■ The first criteria, fines and penalties, include both civil and criminal fines for driving infractions. *In re Stevens,* 184 B.R. 584, 585 (Bkrtcy.W.D.Wash.1995). The second element requires the fine/penalty be payable to a governmental unit. Assignment of such a claim to a collection agency will not necessarily make the fine/penalty dischargeable if the governmental unit remains the real

party in interest. *Stevens,* 184 B.R. at 586; *In re Berreth,* (an unreported decision of this court filed on March 9, 1995, (A94–0084–R4B)).[1] Last, the court looks at whether the fine is compensatory. This court has held in *In re Bossert,* 201 B.R. 553, 559 (Bkrtcy. E.D.Wash.1996) interest is compensation for loss of use of money and therefore dischargeable. *Id.* at 557 (citing *Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 907–08, 11 L.Ed.2d 772 (1964)); *see also, Hyde v. Wellpinit School Dist.,* 32 Wash.App. 465, 648 P.2d 892 (1982).

■ Thus, under a Chapter 7, all fines, penalties, whether civil or criminal are nondischargeable, although compensatory interest and costs on the penalties may be dischargeable.

### 2. *Chapter 13 Discharge Provisions.*

■ In contrast to the Chapter 7 discharge provisions, 11 U.S.C. § 1328(a)(3) excepts from discharge only a debt for restitution, or a criminal fine included in a sentence on the debtor's conviction of a crime. Consequently, Chapter 13 provides broader relief for the debtor who completes the 13 plan by discharging civil fines and penalties leaving only criminal fines and penalties nondischargeable.

### 3. *The State Statutory Scheme for Criminal Traffic Violations and Infractions.*

■ Washington State has divided the penalties arising from traffic offenses into two categories: civil infractions and criminal offenses. RCW 46.63.020. A civil infraction is one for which imprisonment can not be imposed as a sanction. RCW 7.80.070(2)(b).

As we have seen, this distinction between traffic offenses has significance in the bankruptcy context.

■ Washington state has provided that a person's driver's license may be sus-

---

1. This court also held on the facts in *Berreth* that the collection costs in that case were not payable to and for the benefit of a governmental unit and therefore dischargeable. RCW 19.16.500 which deals with costs in such cases has since been amended to define the fine as including the costs of collection. 1997 WA. Sess. Laws, Ch. 387 § 1 (May 15, 1997). It remains to be seen if this amendment will have any impact on whether the collection agency fees authorized will be dischargeable as constituting compensation for pecuniary loss under 11 U.S.C. § 523(a)(7).

pended for a number of grounds including the failure to pay civil fines. RCW 46.20.291(5); RCW 46.20.289; and RCW 46.63.070(2) & (5). Revocation of driving privileges under these provisions would be stayed upon filing of a bankruptcy case by the subject driver if that revocation constituted collection efforts as opposed to continuation of a criminal proceeding against the debtor. *Hucke v. State of Oregon,* 992 F.2d 950, 953 (9th Cir.1993); 11 U.S.C. § 362. If the defendant's license had already been suspended at the time of filing the Department of Licensing may reinstate the debtor's driving privileges on proof of filing of a Chapter 13 petition and evidence of insurance coverage. If a debt has been discharged or will be discharged upon successful completion of a pending chapter 13 case, the state may not deny driving privileges to a person simply because he/she has not paid a civil debt. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

The debtors in this case urge application of these rules for their benefit in this case.

## C. *The Specific Application to the Facts of this Case.*

Having provided a general outline of the applicable law, the Court will now proceed to analyze the specific statutory provision and apply them to the facts of this case.

### 1. *Fines/Penalties Are Not Priority Debts.*

■■■■ The Debtors in this case originally scheduled the fines/penalties in question here as priority debts. The schedules reflect that these debts include penalties for illegal use of plates, open container violation, and driving while license suspended.[2] The Debtors correctly recognizing that there was no statutory basis to claim priority status for these fines/penalties debts have abandoned that assertion. 11 U.S.C. § 507. Instead they propose to separately classify these fines/penalties and pay them in full in their plan.

2. For purposes of this decision the court presumes that these fine/penalties arise from criminal traffic offenses. In the future the court will require the debtors to provide a specific refer-

### 2. *Classification of Claims.*

■■■■ The Debtors have placed their criminal traffic fines in a separate class and propose to pay them one hundred percent while paying nothing to other unsecured claims. Traffic penalties, whether civil or criminal, are unsecured claims. The issue before the court is whether they may be treated differently than other unsecured claims. 11 U.S.C. § 1322(b)(1) permits classes of unsecured claims pursuant to § 1122 as long as the classification does not discriminate unfairly against any similarly situated class. Unlike a Chapter 7 liquidation, unsecured creditors have no right to pro rata payment in a Chapter 13. *In re Tucker,* 159 B.R. 325 (Bkrtcy.D.Mont.1993). By virtue of the statutory language of § 1322(b)(1), Congress clearly intended that a debtor can create classifications and that some discrimination be allowed. However, because Congress did not define the term "discriminate unfairly" the courts have developed a test which sets forth a four part query: 1) whether the discrimination has a reasonable basis; 2) whether the debtor can carry out a plan without the discrimination; 3) whether the discrimination is proposed in good faith; and 4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. *In re Wolff,* 22 B.R. 510 (9th Cir. BAP 1982). We will look at each of these factors in the context of this case.

### a) **Whether the discrimination has a reasonable basis?**

■■■■ Our circuit has held that the nondischargeable nature of a debt, by itself, is not a reasonable basis for discrimination. *In re Sperna,* 173 B.R. 654 (9th Cir. BAP 1994) (nondischargeable nature of student loan, standing alone, insufficient). The court in *Sperna* rejected the notion that the debtor's right to a "fresh start" required emergence from bankruptcy completely free of all debt. *Sperna* at 659. It also rejected the notion that special provisions for collection of those nondischargeable debts, although relevant,

ence to the statutory authority which criminalizes the specific offense charged which is sought to be separately classified.

justified effecting a subordination of all other unsecured claims in and of themselves. *Id.* Thus, we must look to other reasons which justify the different classification.

Mr. Games submitted an affidavit stating he is an iron worker who must commute substantial distances to construction sites and his driver's license is "absolutely essential" to his employment. Filing this Chapter 13 case allowed the reinstatement of his driving privileges in that it provides a way to satisfy the penalties relating to his traffic offenses, both civil and criminal. Mr. Games states his ability to support his spouse and five children and pay his current and back child support depends on the success of his Chapter 13 plan. The court finds the Debtors assertions credible.

The court finds guidance in dealing with this problem in the case of *In re Gonzales,* 172 B.R. 320 (E.D.Wash.1994). The debtor in that case was separately classifying child support debt. At the time of filing this was a general unsecured obligation.[3] Judge Quackenbush authorized separate classification of the general unsecured child support debt, with payment in full of that debt, although the other unsecured debt would receive nothing. In looking at the issue of whether the classification rationally furthered an articulated, legitimate interest of the debtor, the court found allowing the classification of child support furthered the strong public policy of repayment of support obligations, assured payment by placing it in a plan, and that unsecureds generally would receive nothing in a Chapter 7. Since the failure to pay child support may result in contempt proceedings or criminal penalties, the *Gonzales* court concluded the inclusion of the support in a plan the more persuasive approach. This approach is equally persuasive here. The separate classification will enable the debtor to retain his driving privileges, which will in turn keep him employed so that he can support his family and pay his back support, all socially sanctioned goals. The Debtors here, like Gonzales, are not using the bankruptcy case as a device to

evade responsibility, but rather as an aid to assist in meeting their responsibilities. 172 B.R. at 327.

The court finds the cases such as *In re Limbaugh,* 194 B.R. 488 (Bkrtcy.D.Or.1996), *In re Bowles,* 48 B.R. 502 (Bkrtcy.E.D.Va. 1985) and *In re Cuevas,* 205 B.R. 457 (Bkrtcy.D.N.J.1997) distinguishable since they dealt with the more complicated issue of criminal restitution and the state's right to incarcerate as a punitive measure for the purpose of protecting the public safety. In contrast, this court is dealing with collection measures by way of suspension of driving privileges which do not infringe on the state's right to utilize its criminal laws to protect its citizens safety. *Hucke v. State of Oregon,* 992 F.2d 950 (9th Cir.1993).

The court finds the debtor has met the first prerequisite for separate classification of these claims.

### b) Whether the debtor can carry out the plan without the proposed discrimination?

As already noted, Mr. Games must travel some distance to work which requires him to drive. Without providing for repayment of the criminal traffic claims, the Department of Licensing is not required to reinstate Mr. Games' driving privileges. Without the ability to have his driver's license reinstated, Mr. Games will be unable to fund the Chapter 13 plan. Consequently, without the proposed discrimination, the plan cannot be effectuated, meeting the second *Wolff* prerequisite.

### c) Whether the discrimination is proposed in good faith?

Although the language of § 1325(a)(3) clearly requires a plan be proposed in good faith and not by any means forbidden by law, the burden on a Chapter 13 debtor in establishing good faith is especially heavy when "superdischarge" or discharge of an otherwise nondischargeable debt is sought. *In re Warren,* 89 B.R. 87,93 (9th Cir. BAP 1988). However, because the code does not define

---

**3.** Subsequent to the *Gonzales* decision Congress in 1994 amended the Bankruptcy Code to make child support obligations priority debts.

"good faith," interpretation of this requirement has been left to the courts with varying results.

It may be helpful to first define what good faith is not. It is not the equivalent of best efforts which requires only that a debtor fund the plan with his/her disposable income for a minimum three year term. 11 U.S.C. § 1325(b)(1)(B); *In re Goeb*, 675 F.2d 1386 (9th Cir.1982). Nor does it require substantial repayment to unsecured creditors since § 1325(a)(4) only requires that the amount distributed under the plan for unsecured claims be not less than the amount which would have been received in a Chapter 7. To require otherwise would run contrary to the language of the statute and would not necessarily promote the purpose of the code. *Goeb*, at 1389.

What then is good faith? The *Goeb* court stated the proper inquiry is whether the debtors acted equitably in proposing their Chapter 13 plan. *Id.* at 1390. In the context of a Chapter 13, the court in *Warren* set out eleven factors to aid in the factual determination of good faith:

1) The amount of the proposed payments and the amount of the debtor's surplus;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

*Warren* at 93.

As already noted best efforts do not equate good faith nor do no payments or only nominal payments equate bad faith. *Goeb*, at 1388. Here, the court finds the relevant factors on the issue of good faith are the duration of the plan, preferential treatment, the type of debt to be discharged and the special circumstances which are the basis for the disparate classification. The court is troubled by the fact that the Debtor proposes a 49 month plan which is sufficient to pay the fines and child support but offers nothing to unsecured creditors who comprise the bulk of the general unsecured claims. As already noted the nondischargeability nature of the debt does not, by itself, support the preferential treatment. On the other hand, the court recognizes the motivation for the classification is the hardship which will be imposed on the Debtor's ability to support his family if his driver's license is not reinstated. Nevertheless, the court finds the Debtors' good faith questionable, in light of the following discussion of the fourth *Wolff* factor, below.

**d) Whether the degree of discrimination is directly related to the basis for the proposed discrimination?**

This last and fourth factor is the most difficult to resolve since it squarely focuses on the distribution to the preferred creditors at the expense of the rest of the unsecured creditors.

The Debtor proposes to pay the criminal fines and back child support over a 49 month period but offers zero to the balance of the unsecured creditors. The Debtors argue that 49 months is long enough to live under the constraint of Chapter 13 and the stress it places on their family. The court finds this argument unpersuasive on the facts of this case. The Debtors must be in the plan 49 months as a minimum to accomplish their purposes and to obtain the benefits of the super discharge. An additional eleven months in the plan would provide an additional $3,080.00 for distribution to the unse-

cured creditors. This is a sufficient amount as not to cause an administrative burden for the trustee. A refusal by the Debtors to go beyond the bare minimum effort is evidence of their intent to take advantage of the substantial benefits of Chapter 13 super discharge but avoid any detriment.

This case is similar to *In re Strausser*, 206 B.R. 58 (Bkrtcy.W.D.N.Y.1997) in which the debtor proposed to pay in full a co-signed consumer debt over a 3.1 year term, while paying the other general unsecureds five percent. The court denied confirmation, stating:

> ....Ms. Strausser offers no meaningful contributions beyond what is required for confirmation under 11 U.S.C. § 1325(b)(1). In other words, Ms. Strausser seeks an extraordinary benefit with no extraordinary sacrifice, and all to the detriment of her creditors. Reflecting no special considerations that might serve as a quid pro quo for any diminution of distributions, the plan discriminates without fairness to the general class of unsecured claimants.

> Fairness dictates that a discriminated class derive some compensation for the denial of whatever greater distribution is to be accorded to the members of a different class of similarly entitled creditors.

*Strausser*, at 60.

The court believes that the just quoted remarks have equal applicability to these Debtors' case. The Debtors' plan proposes to pay only the non-dischargeable debt and no more. It does not appear from the record that it would cause any undue burden on the Debtors if they extended the term of their plan to the full five years, an extension of eleven months.

As in *Strausser*, the Debtors seek the extraordinary benefit of the Chapter 13 super discharge—discharge of civil traffic infractions, reinstatement of driving privileges and repayment of nondischargeable and priority debt over an extended period of time—with no extraordinary sacrifice, all to the detriment of the general unsecureds. It is not unreasonable to ask the Debtors to offer some payment to general unsecureds for the benefit received by use of the Chapter 13. The court finds the Debtors' refusal to provide any benefit to the general unsecured creditors evidences a lack of good faith.

The court concludes that the degree of discrimination proposed in the Debtors' plan, one hundred percent for the criminal traffic fines and zero percent to the balance of the general unsecureds, is arbitrary and unfairly discriminatory and thus creates an unreasonable classification of claims. If the Debtors proposed to extend their plan to the full sixty month term, the court would be satisfied that the discrimination proposed would neither be arbitrary nor unfair but rather would be evidence of the Debtors good faith compelled by the facts, economics and applicable statutes.

### 3. *Term of the Plan.*

The Debtors argue the court cannot require the Debtors to extend the length of the plan beyond the three year term. *In re Porter*, 102 B.R. 773 (9th Cir. BAP 1989). The BAP held in that case a three year plan is preferred and the debtor must voluntarily choose to extend the plan beyond that time. The court may approve a longer term upon a showing of cause by the debtor but in *Porter* no cause for extension was shown. 102 B.R. at 778, 11 U.S.C. § 1322(d).

▮ In this case the Debtors are unable to perform the plan within the framework of the three year statutory period, therefore they must obtain court approval for the proposed extension. In considering whether it should authorize extension of the plan along the lines proposed by the Debtors, the court has examined whether the proposal was filed in good faith. It has concluded that it was not. Therefore the court declines to authorize the extension of the plan's term to 49 months. If the Debtors should choose to modify their plan to extend it to the full 60 months allowed under the statute, they will have resolved the court's concerns about their good faith in proposing a plan, the court would accordingly find sufficient cause for extension of the term of the plan beyond 36 months. If the Debtors wish to obtain the benefits of a chapter 13 they must shoulder the burdens. The decision is theirs.

## V. *CONCLUSION*

The Court has a duty to review proposed Chapter 13 plans to insure statutory compliance.· The Debtors' plan which proposes to pay non-dischargeable criminal traffic fines one hundred percent while paying zero percent to the other general unsecured creditors constitutes an improper Classification of Claims in that it unfairly discriminates among the unsecured claimants in this case. Confirmation of the Debtors proposed Chapter 13 is denied. The Debtors may modify their proposed plan consistent with the terms of this opinion within thirty days from this date. If the Debtors decline to do so the trustee may move for dismissal of their case.