In re Oscar CHACON, Jr. and
wife Patricia Chacon

Travis J. MATSON

Salomon RAMIREZ and wife
Maria A. Ramirez

Deloris SIMMONS

Bankruptcy Nos. 98–30602, 98–
30618, 98–30651, 98–30674.

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Aug. 11, 1998.

Edgar J. Borrego, El Paso, TX, for Debtors.

Phyllis Bracher, El Paso, TX, Chapter 13 Trustee.

### Memorandum Opinion

LARRY E. KELLY, Chief Judge.

On June 23, 1998, the court held hearings on the confirmation of the respective Chapter 13 plans in the four captioned cases. Each Debtor had the same law firm and substantially the same boilerplate plan provisions. One provision, which has attracted the objection of the Chapter 13 Trustee, Phyllis Bracher, is the separate classification and payment of co-signed consumer debt ahead of the general unsecured claims. The query raised is whether this treatment unfairly discriminates against the general class of unsecured claims. After hearing the evidence and considering the parties' arguments, the court took this matter under advisement. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(L). The following represents the court's findings of facts and conclusions of law as required by Fed. R.Bankr.Pro. 7052.

### Statement of the Cases

In each of these cases, the Trustee has not challenged the Debtors' position that each of the preferred co-signed claims represent consumer debt which was incurred for the Debtors' benefit and not that of the co-signers.

Also, in each case, the Debtors' plans contain the following identical provision:

"From the payments so received, the Trustee will make disbursements in the following order:

**f. UNSECURED CLAIMS:** Unsecured claims will be divided into three classes and each claim within a particular class shall receive the same treatment.

(1) Class 1 shall be all claims arising out of consumer debts for which any individual is liable with the Debtor by way of co-signature, guarantee, endorsement or otherwise. All claims in this class shall be paid in full, including interest, on a pro rata basis.

(2) Class 2 shall be all claims based on NSF checks, any claims which might incur criminal sanction, or arrearage on child support or alimony payments and will be treated as priority claims.

(3) Class 3 shall be all other unsecured claims. Payments, if any, to this class will be on a pro-rata basis. All allowed claims of this class shall be paid an amount under the Plan which is not less than the amount that would be paid on such claims if the estate of the Debtor was liquidated under chapter 7 of the bankruptcy Code on the date of the filing of the petition herein. In calculating the payments to creditors, there shall not be included payments made by the Trustee on any arrearage for rent or house payments, payments made by the Trustee to the Debtor, any payments made by the Trustee on claims not listed in the original Schedule of Debts in these proceedings by the Debtor, nor payments made by the Trustee on post-petition debts. Any Class 3 unsecured claims to be paid in the amount of $50.00 or less may be paid, to such extent in full, in equal installments, or as the Trustee elects, rather than on a pro-rata basis.

Unsecured claims may be paid concurrently with priority and secured claims so long as each secured creditor is receiving not less than its contract monthly installments. Such delinquencies on secured claims and Classes 1 or 2 unsecured claims must be

brought current before any payments are made on Class 3 unsecured claims."

Specific facts related to each separate case are as follows:

*Oscar Chacon, Jr. and Patricia Chacon—98–30602:*

The Debtors pay the trustee $188 per month for a period of 60 months. The estimated payout to the general unsecured claims is 38%. The co-signed claim at issue is to TSWAG–FCU in the amount of $1,180. This debt was co-signed by the Debtor's father.

The Debtors propose to pay the co-signed consumer debt 100% with interest at 12%, and to pay it in full before any sums are distributed to the general unsecured claims. It is estimated that it will be approximately four years before any sums would be available for distribution to the general unsecured claims.

The Debtors allege that the father is on a fixed income, cannot repay this debt on his own and they do not want to "hurt" his credit history. No evidence was presented on these allegations, nor on the payment history of this claim, nor even on what the pre-petition terms and conditions for payment of this debt are.

*Travis J. Matson—98–30618:*

This Debtor pays the trustee $418 per month for a period of approximately 33 months. The estimated payout to the general unsecured claims is 100%. The co-signed debt at issue is to Bank One for $3,683. This debt was co-signed by the Debtor's ex-wife, represents primarily credit card debt, and the Debtor was ordered to repay it by the divorce court decree.

General unsecured claims are to be repaid without interest and only receive disbursements after the secured claims and this co-signed claim are paid in full, with interest. It is estimated that it will be approximately 18–20 months before sums will be available for distribution to the general unsecured claims.

The Debtor presented no evidence on the necessity for this classification nor any evidence on what the normal, pre-petition terms and conditions of repayment of this debt were. The only reason given for the classification was that he might encounter problems later and thus he wanted to "get rid" of this claim.

*Salomon Ramirez and wife Maria A. Ramirez—98–30651:*

The Debtors pay the trustee $125 per month for a period of 60 months. The estimated payout to the general unsecured claims is 20%. The co-signed debt at issue is to Mervyns Credit in the amount of $844, and this debt was signed by Mrs. Ramirez's sister.

The Debtors propose to pay the co-signed consumer debt 100% plus interest at the rate of 12%, and further to pay it in full before any sums are distributed to the general unsecured claims. It is estimated that it will be approximately 33 months before any sums would be available for distribution to the general unsecured claims.

No evidence was introduced as to any hardship to the sister which could occur if she is forced to repay this co-signed debt. No reason was given for the classification other than the debt was for the benefit of the Debtors and not the sister. No evidence was introduced on the payment history of this claim or what its pre-petition terms and conditions of payment were.

*Deloris Simmons—98–30674:*

This Debtor pays the trustee $370 per month for a period of 43 months. The estimated payout to the general unsecured claims is 100%. The co-signed claims at issue are to Capital One for $1,253 and to The Associates for $2,886. This debt was co-signed by the Debtor's ex-husband, currently incarcerated at Ft. Sill, Oklahoma.

This plan, like the others, proposes to repay the co-signed debt in full, with interest at 12%, before any distributions are to be made to the general unsecured claims. It is estimated that it will take approximately 24 months before any sums would be available for distribution to the general unsecured claims. This Debtor also has a new 1998 Honda Accord automobile and is paying this $19,500 debt outside the plan.

No reason was given for the classification scheme other than the Debtor thought she might possibly have future financial troubles and wanted to get these two debts satisfied. No information as to the pre-petition status or terms of these two debts was introduced nor as to the financial abilities of the ex-husband.

*Separate Classification in Chapter 13 Plan.*

Section 1322(b)(1) of the Bankruptcy Code governs whether a Debtor can separately classify a claim in a Chapter 13 plan. Section 1322(b)(1) provides:

> Subject to subsections (a) and (c) of this section, the plan may—(I) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; *however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.*(emphasis added).

Although the wording of the statute is awkward, the section clearly permits the separate classification in a Chapter 13 plan of a co-signed debt. The real issue is whether the separate classification must meet the unfair discrimination test. The Debtors urge the court to adopt an interpretation which provides that a Chapter 13 plan may designate a class of unsecured co-signer claims without regard to the prohibition against unfair discrimination. Under the Debtors' interpretation, the term "however" causes debtor's entitlement to separately classify a codebtor liability to be exempt from the unfair discrimination prohibition contained in the first sentence of this Code section.

*Legislative History.*

Legislative history on this issue is sparse. Congress amended Section 1322(b)(1) in 1984 specifically to permit a debtor to separately classify a debt when another individual guarantees the repayment of the debt. *In re Thompson*, 191 B.R. 967, 969 (Bankr.S.D.Ga. 1996). In modifying Section 1322(b)(1), Congress intended to overrule the majority of cases that refused to separately classify codebtor claims. *S.Rep. No. 65*, 98th Cong., 1st Sess., pp. 17–18 (1983). These courts rationalized that codebtor claims were not sufficiently different from other type of claims to justify a separate classification. *Id.* In response, Congress determined that there are important practical differences between codebtor claims and other unsecured claims that justify a separate classification. *Id.* For example, a debtor often will feel compelled to pay a codebtor claim over other unsecured claims when the codebtor is a friend or relative. *Id.* In addition, Congress was concerned with the possible ripple effect of a debtor not paying a codebtor claim. *Id.* If the codebtor also cannot pay the claim, then the codebtor may be forced to file a bankruptcy petition causing escalating financial problems to other parties as well. *Id.* Thus, due to these reasons, Congress decided that a debtor should be permitted to separately classify codebtor claims in a Chapter 13 plan. *Id.* However, Congress failed to address whether the separately classified codebtor claims must meet the unfair discrimination test set forth in the first clause of Section 1322(b)(1).

Many courts have wrestled with the issue of whether Section 1322(b)(1) permits a debtor to separately classify a codebtor claim without considering whether the proposed classification unfairly discriminates against other unsecured creditors. Some have viewed the 1984 amendment to section 1322(b) as creating an exception to the prohibition against unfair discrimination. This is the position taken by the Debtors in this court. See *In re Dornon*, 103 B.R. 61 (Bankr.N.D.N.Y.1989) (holding that the amendment "constitutes" a "carveout" to the "unfair discrimination standard"). (*Id.* at 64); *In re Riggel*, 142 B.R. 199 (Bankr. S.D.Ohio 1992); and *In re Chapman*, 146 B.R. 411 (Bankr.N.D.Ill.1992).

■ Nevertheless, the weight of authority comes down with the view that the different treatment must nonetheless avoid unfair discrimination. See *In re Perkins*, 55 B.R. 422 (Bankr.N.D.Okla.1985); *Nelson v. Easley (In re Easley)*, 72 B.R. 948, 956 (Bankr. M.D.Tenn.1987); *In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill.1988); *In re Husted*, 142 B.R. 72 (Bankr.W.D.N.Y.1992); *In re Ross*, 161

B.R. 36, 37–38 (Bankr.C.D.Ill.1993); *In re Cheak,* 171 B.R. 55, 58 (Bankr.S.D.Ill.1994); *In re Gonzales,* 172 B.R. 320 (E.D.Wash. 1994); and *In re Battista,* 180 B.R. 355 (Bankr.D.N.H.1995). Particularly persuasive is the reasoning which Judge Lundin expresses in *In re Easley,* 72 B.R. 948 at 956 (To give meaning to all words in the amended section, it must be true that a debtor's power to treat co-signed consumer debts 'differently' has content separate from the proscription against unfair discrimination. The awkward language is resolved by holding that all different treatments are not necessarily fair discrimination.). See also *In re Strausser,* 206 B.R. 58, 59–60 (Bankr. W.D.N.Y.1997)(The debtor bases her position upon the language added in 1984, that being the clause that begins with the word 'however'. Although authorities have disagreed about the interpretation of this provision, the better view requires that no unfair discrimination result from the different treatment of co-signed obligations.); *In re Janssen,* 220 B.R. 639 (Bankr.N.D.Iowa 1998)(This court concludes that if Congress had intended for the unfair discrimination standard not to apply, it could easily and clearly have said so.); and *In re Applegarth,* 221 B.R. 914 (Bankr. M.D.Fla.1998)(The debtor cannot separately classify a co-debtor claim under section 1322(b)(1) without proving that the separate classification does not unfairly discriminate against other unsecured creditors.).

The legislative history of the 1984 amendment to section 1322(b)(1) supports the view that a debtor's separate classification of a codebtor claim cannot unfairly discriminate. Before the amendment, a debtor could classify unsecured claims together only if they were substantially similar and then only if the classification did not unfairly discriminate against other unsecured creditors. *In re Strausser,* 206 B.R. at 59. The Debtors cite the court to *Public Finance Corp. v. Freeman,* 712 F.2d 219 (5th Cir.1983). However, this Fifth Circuit case, written before the 1984 amendments, only shows that it followed the line of cases that recognized the ability of debtors to separately classify co-signed debts, as opposed to cases like *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir.1982). In the appellate case the bankruptcy court had already found good faith and that the classification and treatment were sufficient. Thus, the Fifth Circuit was faced with trial court findings which carry "...the shield of Fed. R.Civ.P. 52(a)" So it was looking at the findings to see if they were "clearly erroneous". Here, at the trial level, this court is determining the fundamental facts without any such shield. The legislative history of the 1984 amendment of section 1322(b)(1) only discusses the policy reasons for allowing a separate classification of a codebtor claim. *S.Rep. No. 65,* 98th Cong., 1st Sess., pp. 17–18. The legislative history does not mention the unfair discrimination standard. Id. If Congress wanted to waive the unfair discrimination requirement, it could expressly have done so. *In re Strausser,* 206 B.R. at 59; *In re Battista,* 180 B.R. at 357. Thus, this court concludes that the proper interpretation of Section 1322(b)(1) is that a codebtor claim may be separately classified only if the classification does not unfairly discriminate.

*Unfair Discrimination Test.*

No bright line rule exists to determine whether a debtor is unfairly discriminating against other unsecured creditors by separately classifying a codebtor claim. Rather, a case by case analysis is necessary. The factors to consider in determining whether a debtor is unfairly classifying unsecured claims include:

(1) The discrimination must have a reasonable basis;

(2) The debtor cannot carry out a plan without such discrimination;

(3) The discrimination is proposed in good faith; and

(4) The degree of discrimination is directly related to the basis or rationale for the discrimination.

Restating this last element, does the basis for the discrimination demand that this degree of differential treatment be imposed? *In re Wolff,* 22 B.R. 510 (9th Cir. BAP 1982) citing *In re Kovich,* 4 B.R. 403 (Bankr.Mich. 1980) and as refined in *In re Dziedzic,* 9 B.R. 424 (Bankr.Tex.1981); also *In re Whitelock,* 122 B.R. 582, 589 (Bankr.D.Utah 1990).

Other courts have expressed the factors as:

(1) Whether there is a rational basis for the classification;

(2) Whether the classification is necessary to the debtor's rehabilitation under Chapter 13;

(3) Whether the discriminatory classification is proposed in good faith; and

(4) Whether there is a meaningful payment to the class discriminated against.

*In re Husted,* 142 B.R. 72 (Bankr.W.D.N.Y. 1992). In addition, Judge Ninfo urges consideration of a fifth factor, namely "the difference between what the creditors discriminated against will receive as the plan is proposed and the amount they would receive if there was no separate classification." *Id.* at 74, quoting *In re Moore,* 31 B.R. 12, 17 (Bankr.D.S.C.1983).

Using these factors as a guideline, the debtor has the burden of proof to show that there is no unfair discrimination against other unsecured creditors. *Wolff,* 22 B.R. at 512; *Cheak,* 171 B.R. at 58.

*Analysis:*

1. *Oscar Chacon. Jr. and wife Patricia Chacon:*

■ The father of one of the Debtors is the co-signer at issue in this case. Debtors argued that he is on a limited income and may be unable to repay the co-signed debt on his own. Other than these allegations, no evidence on his financial abilities was introduced. The Debtors introduced no evidence to show the necessity for the classification as it related to their ability to perform a Chapter 13 plan. If the payments to the co-signed unsecured claim were shared pro-rata with other unsecured claims, even after adding the co-signed debt into the pool, the estimated share of repayment would rise from 38% to 50%. Nothing indicated that the father might not be able to repay 50% of the co-signed debt. Paying the co-signed debt in full, with 12% interest prior to any distributions to the general unsecured class was a high degree of differential treatment, and no rational basis for doing this was sustained by the evidence.

These Debtors have failed to meet their burden of proof and by separate order of even date herewith, their plan confirmation will be denied.

2. *Travis J. Matson:*

■ The Debtor's ex-wife is the co-signer at issue in this case. No evidence was given as to her capability to repay any of this debt during the life of the plan. Further, since this is a 100% repayment plan over approximately 33 months, no evidence was introduced to show why repayment of the co-signed debt, pro-rata with other general unsecured claims over this same period, would not fully satisfy any legal, moral, or equitable obligation of the Debtor with respect to his ex-wife and this debt. Nothing was introduced to show why the Debtor could not operate under a Chapter 13 plan without this differentiation nor why this high a degree of differential treatment was called for.

This Debtor has failed to meet his burden of proof and by separate order of even date herewith, his plan confirmation will be denied.

3. *Salomon Ramirez and wife Maria A. Ramirez:*

■ The co-signer in this plan was Mrs. Ramirez's sister. The totality of the debt was $844. No evidence of any financial hardship to the sister was introduced. The Debtors introduced no evidence to show that failure to so classify this debt would detrimentally impact their ability to perform on their Chapter 13 plan. If the Debtors diverted the $844 they propose to pay direct to Mervyn's into payments to the general unsecured class, the percentage of repayment rise from 20% to 25%. Again, nothing was introduced to show that the sister could not repay 75% of the Mervyns debt.

These Debtors have failed to meet their burden of proof and their plan confirmation will, by separate order of even date herewith, be denied.

4. *Deloris Simmons:*

■ This debt was co-signed by her ex-husband. This is also a 100% repayment

plan over 43 months. Nothing was introduced to show why this Debtor could not just amortize repayment of the two obligations at issue over 43 months and satisfy her creditors, protect her co-signer, and fully satisfy her plan obligations.

This Debtor has failed to meet her burden of proof and her plan confirmation will by separate order of even date herewith, be denied.

**IT IS SO ORDERED.**