**In re JoAnn C. SMALBERGER, Debtor.**

**Bankruptcy No. 393-32040-H13.**

United States Bankruptcy Court, D. Oregon.

Aug. 12, 1993.

Michael Caro, Portland, OR, for creditor.

Michael Blaskowsky, Portland, OR, for debtor.

Robert W. Myers, trustee in bankruptcy, Portland, OR.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon the objection of St. Vincent Portland Federal Credit Union ("creditor") to confirmation of the debtor's proposed chapter 13 plan. The debtor is represented by Michael Blaskowsky and the creditor is represented by Michael Caro, both of Portland, Oregon.

 The debtor's plan separately classifies certain student loan obligations and proposes to pay them in full while paying nothing to other unsecured creditors. The creditor objects on the ground this classification is unfair under § 1322(b)(1).[1]

---

1. The creditor also objects on the ground "that by paying the unsecured student loan obligations the debtor is not using all her disposable income to make payments under the plan in violation of 11 USC § 1325(b)(1) and (2)...." Creditor's Letter Memorandum, p. 1, ¶ 1, dated June 22, 1993.

This objection is not well taken. The creditor has not objected to the debtor's budget. Thus, there is no dispute that the debtor is contributing all the disposable income to the plan. The creditor's only complaint is that the plan proposes to distribute the disposable income in an improper manner.

The creditor also objects on the ground the plan violates § 1322(a)(3) which provides: "The plan shall—if the plan classifies claims, provide the same treatment for each claim within a particular class." Again, this objection is not well taken. The debtor's proposed plan classifies claims. Specifically, the plan separately classifies the student loan claims and the other non-priority unsecured claims. The plan proposes that the student loan claims will be paid in full while the other non-priority unsecured creditors will be paid nothing. Thus, while the treatment provided to each class of claims is different, the treatment provided to each claim within each class is the same. This complies with § 1322(a)(3) and is, in fact, the basis for the creditor's objection.

The plan proposes to pay one student loan claimant directly and the other through the plan. This distinction is insignificant, howev-

■ The creditor argues that the student loan debts are simply unsecured claims that should not be preferred. The debtor points out that the student loan debts are non-dischargeable under § 1328(a) unless the failure to discharge them would impose an "undue hardship" under that statute. Thus, the debtor argues she should be able to pay the student loan debts to protect her "fresh start."

■ The court is aware of no binding authority on this issue. The primary statute in question, § 1322(b)(1), provides:

"Subject to subsections (a) and (c) of this section, the plan may designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims...."

From this language, it is apparent that co-signed consumer obligations are not the only type of unsecured claims which may be separately designated. If co-signed consumer obligations were the only permitted classification, there would be no need for the first phrase of the quoted language which begins "subject to" and ends "any class so designated."

■ The legislative history to § 1322(b) does not specify the grounds upon which a court should determine whether a proposed classification is unfair. The legislative history to § 1122 states that § 1122: "[C]odifies current case law surrounding the classification of claims...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 406 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6362. Many opinions have been written in this area but they are not particularly helpful in this court's opinion. Collier's agrees. See *Colliers on Bankruptcy*, 15th Ed., ¶ 1322.05[2] and the comments and cases cited therein. Since a court's function in statutory construction is to glean the intent of the legislature, the analysis should focus on Congressional intent.

■ From the language of § 1322(b)(1), it is apparent that the court should consider the proposed classification from the viewpoint of the creditors who are discriminated against. If it can be said that such classification is "unfair" to them, it should not be permitted. By using the concept of "fairness," Congress has left this determination to the discretion of the court. This court believes that, to the extent possible, legal issues should be determined on an objective—rather than a subjective—basis. Thus, the following analysis attempts to analyze the issue at hand and derive a rule that can be objectively and consistently applied regardless of the individual judge or litigants involved.

In 1990, Congress amended § 1328(a) to restrict the dischargeability of certain student loan debts such as these and to except from discharge certain criminal restitution debts and certain debts arising from the operation of a vehicle while intoxicated. Pub.L. No. 101–508 (1990). The legislative history surrounding these amendments does not specify the reason for the inclusion of student loans in the amendments.

After these amendments, creditors holding non-dischargeable student loan claims may legally take action to collect on their claims after a chapter 13 case is completed and a discharge has been granted. Obviously, those creditors holding discharged claims may not. Thus, a creditor holding a non-dischargeable student loan claim is more likely to be repaid than a creditor holding a dischargeable, unsecured claim.

■ It would seem unfair to tell creditors holding dischargeable claims that other creditors who hold non-dischargeable claims (and who may thus pursue post-bankruptcy collection efforts against the debtor) are to be preferred not only after the bankruptcy case is completed but also during the time payments are being made

er, since both claims will be paid in full and neither student loan claimant has objected to this proposal. So far as the objecting creditor is concerned, this distinction is meaningless.

Further, the reason for this difference is adequately explained in the debtor's Memorandum in Opposition (dated June 4, 1993) at p. 3, footnote 2.

to creditors. To put it colloquially, receipt of payments under the chapter 13 plan is the only shot at collecting from the debtor for those creditors holding dischargeable claims while student loan creditors may have more than one shot at collection. This fact would seem to argue against allowing a debtor to separately classify non-dischargeable student loan debts for preferential treatment.

Student loan debts can be viewed differently from restitution and "drunk driving" debts. Congress could have had dual purposes in excepting criminal restitution and drunk driving debts from discharge. One would be to improve the victim's chances of payment and the other would be to discourage individuals from engaging in such behavior. *In re Hudson*, 859 F.2d 1418 (9th Cir.1988); 136 Cong.Rec. S9663 (7–12–1990).

It is extremely doubtful that the purpose of excepting certain government-insured student loan debts from discharge was to discourage students from borrowing money. If this were the case, Congress could simply discontinue the student loan guarantee programs. On the other hand, it would seem that one of the purposes of the amendment which makes certain student loan debts non-dischargeable was to improve the chances that government-guaranteed loans would be repaid. This obviously is beneficial to taxpayers and future students who need to borrow money for schooling.

Another way that Congress could have improved the chances that government-guaranteed loans would be repaid would be to grant a priority to student loan claims. Under § 1322(a)(2), a plan must provide for payment in full of all debts entitled to priority under § 507. Certain income tax debts, for example, are specified in § 507(a)(7). The provisions of § 1322(a)(2) help insure that those income tax debts are paid in chapter 13 cases. If Congress intended to grant a priority for student loan claims, it seems that Congress could have simply included such claims in the list of debts entitled to priority under § 507. Another possibility is that Congress could have specifically included student loans in § 1322(b)(1) as it did for co-debtor claims.

The fact that Congress has not provided priority treatment for student loan debts either in § 507 or § 1322(b)(1) is some indication that Congress did not intend such debts to be separately classified from other unsecured debts and be given preferential treatment.

The debtor argues that the policy favoring a "fresh start" supports the proposed classification. This argument is too broad. Logically applied, this argument would mean that the debtor should be permitted to separately classify not only student loan debts but also any debt declared to be non-dischargeable in § 1328(a). Also, there would seem to be less need to separately classify student loan claims than to separately classify other non-dischargeable debts since an escape valve is provided for in the "undue hardship" language in § 523(a)(8). Under that statute, a debtor can discharge a student loan debt if the failure to discharge the debt would work an undue hardship on the debtor or the debtor's dependents. This provision can assist in protecting the debtor's "fresh start."

There is no "undue hardship" provision with respect to claims entitled to priority under § 507. The plan must provide for payment in full of all debts entitled to priority under that section or the plan cannot be confirmed regardless of the hardship this may impose on a debtor or the debtor's dependents. This indicates that the collection of student loan debts is not as high a priority with Congress as the collection of the specified priority claims.

It could be argued that the only appropriate use of classification under § 1322(b)(1) is when it is necessary to do so in order for the plan to succeed. Under this rationale, it would be appropriate to prefer an unsecured trade creditor which enjoys a monopoly on a needed product or service but refuses to continue supplying the product or service to the debtor unless its unsecured claim is paid in full. For example, assume that ABC Corp. holds an allowed

unsecured claim against a debtor and the debtor must have widgets for his plan to succeed. If only ABC Corp. supplies widgets, it might be appropriate to confirm a plan that proposed to prefer ABC Corp. over other unsecured claim holders if ABC Corp. would otherwise refuse to continue supplying widgets.

Under this "viability-of-the-plan" theory, it might be appropriate to prefer a claim for restitution or familial support if the alternative is that the debtor will be sent to jail and the plan will therefore fail. But this rationale would not seem to apply to student loan claims since the failure to pay such a claim would not normally interfere with the debtor's livelihood.

Classification of claims for different treatment will always intrude upon one of the fundamental principles of bankruptcy: similar treatment for similarly situated creditors. The theory that classification may only be permitted in order to protect the viability of the plan, however, limits the extent of the intrusion. Such a limited intrusion seems more consistent with Congressional intent than an approach that would allow many permitted classifications, thus, more intrusion.

Although it is not entirely clear, this court believes it was not Congress's intent in excepting certain student loans from discharge to thereby allow such loans to be separately classified under § 1322(b)(1) for preferential treatment to the detriment of other non-priority, unsecured claim holders. It seems unfair to the creditors in the objecting creditor's class to receive nothing under the plan on account of their dischargeable unsecured claims while creditors holding potentially non-dischargeable unsecured claims are to be paid all of the debtor's disposable income (after administrative, secured and priority claims are paid).

Therefore, the court concludes that the debtor's proposal to prefer the student loan claims does not meet the "fairness" test prescribed by Congress in § 1322(b)(1).[2] The creditor's objections will be sustained.

---

2. The court notes that a debtor might accomplish the result sought here by filing a chapter 7 case and then a chapter 13 case to deal with the nondischargeable obligations. Such "chapter 20" cases are not per se impermissible. See *Johnson v. Home State Bank,* —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

For another interesting approach to this problem, see *In re Dodds,* 140 B.R. 542 (Bankr.Mont.1992), which holds it is permissible to separately classify student loan debts and pay them in full if other unsecured claims are to receive what they would receive in a 36 month plan without separate classification.