**In re PONCE, Robert Celso, Debtor.**

**Bankruptcy No. 97–06200–R33.**

United States Bankruptcy Court,
E.D. Washington.

March 10, 1998.

Joseph D. Harkrader, Office of Chapter 13 Trustee, Spokane, WA, for Chapter 13 Trustee.

Vannoy Culpepper, Yakima, WA, for Debtor.

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Chief Judge.

### I. *Facts & Procedural History*

Robert C. Ponce is the debtor in this Chapter 13 case. His schedules list assets of

$4,021.00, all of which are claimed exempt. The debts total $12,302.00, including a $600.00 criminal fine for driving while license suspended. To date filed general unsecured claims total $11,560.88 including the criminal fine. The debtor's schedules reflect monthly income of $1,127.00 and expenses of $1,027.00.

The debtor's Chapter 13 plan proposes monthly plan payments of $100.00 for 36 months, for a total base amount of $3,600.00. The plan funding analysis reflects the debtor's intent to pay $800.00 attorney's fees, $360.00 trustee's fees, $600.00 for the separately classified criminal traffic fine, and $1,840.00 to the general unsecured claims, totaling the $3,600.00 base amount.

The Chapter 13 trustee filed an objection to the debtor's plan arguing that it could not separately classify the criminal traffic fine without extending the plan term to sixty (60) months.

The case came on for hearing on the court's contested confirmation docket. At that time the matter was set over for an evidentiary hearing at which the debtor appeared and testified. After hearing the evidence this court took the matter under advisement.

## II. *Issue*

Does the debtor's Chapter 13 plan which proposes to pay the criminal traffic fine one hundred percent while paying the remainder of general unsecured claims fifteen percent discriminate unfairly against the unfavored class of unsecured claimants?

## III. *Discussion*

### A. *Statutory Framework.*

■ This case involves the debtor's ability to separately classify claims in a Chapter 13 case. The primary statutory authority on this issue is 11 U.S.C. § 1322(b) which provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable

on such consumer debt with the debtor differently than other unsecured claims;

Section 11 U.S.C. § 1322(a) provides in pertinent part:

(a) the plan shall—

. . .

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

Section 11 U.S.C. § 1122 provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

### B. *The Wolff Test.*

■ The case of *In re Sperna*, 173 B.R. 654 (9th Cir. BAP 1994) provides the leading authority on this issue in the Ninth Circuit. *Sperna* provides at p. 658:

The term "discriminate unfairly" in Section 1322(b)(1) implies that the Chapter 13 debtor may discriminate to some degree in the plan. Furthermore, it is clear that by permitting the separate classification of unsecured claims, Congress anticipated some discrimination, otherwise creating separate classes would serve no purpose. . . . However, Congress did not provide a definition of "discriminate unfairly" in the Code. . . . Courts developed a four-part test to evaluate a plan's discrimination . . . The Panel adopted this test in *In re Wolff*, supra. Under this test, the court must determine:

(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the dis-

crimination. Restating the last element, does the basis for the discrimination demand that this degree of differential treatment be imposed?

(Citations omitted.)

The court will apply the four factors identified in *In re Wolff,* 22 B.R. 510 (9th Cir. BAP 1982) as instructed by *Sperna.*

1. *Whether the discrimination has a reasonable basis?*

All the claims in this case are unsecured and non priority. The debtor is proposing to separately classify and pay in full a criminal fine which is nondischargeable in Chapter 13. 11 U.S.C. § 1328(a)(3). He is preferring this one creditor over all other creditors in that the fine will be paid one hundred percent while the others receive fifteen percent of their claims.

The debtor argues that this different treatment is justified on the basis criminal fines are nondischargeable by statute while the others are not.

There has been a substantial debate in the case law as to whether discrimination on the basis of dischargeability of the debt is reasonable. One line of cases suggests that the separate classification should be approved if it meets the legitimate interests of the debtor. This position has been eloquently and scholarly argued in the case of *In re Brown,* 152 B.R. 232 (Bankr.N.D.Ill.1993), *reversed by McCullough v. Brown,* 162 B.R. 506 (N.D.Ill.1993). In this case Judge Wedoff articulated the following rationale in support of this approach:

> ... If the debtor can point to an objective benefit to be obtained or harm to be avoided by the discrimination, consistent with the purposes of Chapter 13, the debtor's interest should be recognized as legitimate. Here, the debtor's interest is in emerging from the bankruptcy free of debt, with a "fresh start." This is an objective interest entirely consistent with the purposes of Chapter 13. In discussing the need for a limit on the extent of Chapter 13 plans, Congress referred to the fresh start as "the essence of modern bankruptcy law" H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), and its importance has long been recognized by the courts. E.g., *Local Loan Co. v. Hunt,* 292

U.S. 234, 243–45, 54 S.Ct. 695, 698–99, 78 L.Ed. 1230 (1934). Thus, a fresh start is a legitimate interest of the debtor that may be furthered through preferential classification under Section 1322(b)(1).

> Indeed, if Congress's aim of encouraging the use of Chapter 13 over Chapter 7 is to be honored, debtors must be allowed to preferentially classify debt that is nondischargeable in Chapter 13. Without preferential classification, debtors who are obligated to pay debts that are nondischargeable in Chapter 13 will have a strong incentive to use Chapter 7 instead of Chapter 13. In Chapter 7, the debtors are only required to surrender their nonexempt assets—often nothing; they can then retain all of their postpetition disposable income, to use, if they wish, in paying the nondischargeable debt. By contrast, in Chapter 13 without preferential classification, the debtors are required to pay into the plan at least the value of their nonexempt assets, and any disposable income that remains would have to be shared with the unsecured creditors pro rata, for a minimum of three years. Thus, in Chapter 13 without preferential classification, debtors may be required to devote substantial amounts of postpetition disposable income to payment of dischargeable debt, which income, in a Chapter 7, could be devoted exclusively to the nondischargeable debt.

152 B.R. at 240.

Another Bankruptcy Judge in the Northern District of Illinois, Robert Ginsberg articulates the argument for the opposite result in *In re Chapman,* 146 B.R. 411 (Bkrtcy. N.D.Ill.1992):

> The analysis of the issue of whether nondischargeable unsecured claims can be separately classified and paid more than other unsecured claims in a Chapter 13 plan must start by recognizing that the question highlights the clash of two basic philosophies underlying the Bankruptcy Code. The Bankruptcy Code offers an honest debtor a fresh financial start. Howev-

er, it also offers creditors fair treatment of their claims.

146 B.R. at 415–416.

Judge Ginsberg sees this separate classification of nondischargeable unsecured debts as equitable subordination:

If this court allowed the debtor to pay the nondischargeable student loan debt in full while paying the general unsecured claims 10%, the court would, in effect, allow the debtor to obtain the result he seeks not by granting priority to the student loan claims but by reducing the priority of the rest of the unsecured claims, i.e., the dischargeable unsecured claims, to the extent of 90% of their claims. What the debtor would be doing is equitably subordinating 90% of the claims of those creditors holding dischargeable claims to the nondischargeable student loans. . . .

The Code recognizes equitable subordination of claims. *See,* § 510(c). However, except in very rare circumstances, equitable subordination requires wrongdoing by the creditor whose claim is to be equitably subordinated. . . . The creditor-claimant must have engaged in some type of inequitable conduct; this conduct must have injured the creditors of the debtor or provided the creditor-claimant with an unfair advantage; and equitable subordination of the claim must not be inconsistent with the provisions of the Code. . . .

Both groups of creditors are seeking repayment of debts, not penalties. It hardly seems to be an appropriate use of equity to allow the debtor to force the holders of dischargeable claims, who are guilty of nothing more than bad judgment in giving the debtor credit, to fund his education; yet that is the actual result if the debtor is able to subordinate the claims of the holders of dischargeable claims against him to those of his student loan creditors.

146 B.R. at 418.

Judge Ginsberg sees a need for a balance between the competing interests of debtor and creditor:

. . . [T]his court does not believe bankruptcy is only for the relief of impecunious debtors. Instead, in general and in Chapter 13 in particular, bankruptcy constantly requires a balancing of the debtor's need for a fresh financial start against the creditors' right to fair treatment. There is no such balancing in the debtor's proposed plan.

146 B.R. at 420.

This conflict of views among two learned jurists was resolved by Senior District Judge Shadur in the case of *McCullough v. Brown,* 162 B.R. 506 (N.D.Ill.1993) in his reversal of Judge Wedoff's decision in *Brown.* In doing so he criticized Judge Wedoff's emphasis on the debtor's legitimate interest as being the decisive factor:

Begin with the language of the statute itself—the normal place to commence any search for the meaning of a statute. Judge Wedoff stresses Congress' use of "discriminate unfairly," essentially glossing over the rest of the statutory phrase. "Discriminate unfairly" against whom? "Discriminate unfairly *against any class* [of unsecured claims]"! With no disrespect meant to Judge Wedoff's effort, which is plainly a studious attempt to ascertain the congressional purpose, his omission of the key statutory language from that effort has much the same effect as the conjurer's byplay with his or her left hand to shift attention from what the right hand is doing—the classic sleight of hand diversion. There is no gainsaying the fact that the normal meaning of "unfairly against any class" measures the unfairness of the difference in treatment ("discriminat[ion]") in terms of unfairness to the *victim* ("against any class"), rather than unfairness to the person who elects to impose the discriminatory treatment.

Indeed, there is much to be said for a position that the *only* perspective from which the unfairness of a proposed differential in treatment should be evaluated is that of the disfavored class or classes of unsecured claimants. After all, the drafter of the plan decides whom to favor and whom not to favor in the first instance. Educated self-interest can thus be counted on to avoid any proposal that would operate "unfairly" against the drafter. And so

a court's concern, in implementing what has been stated by Congress, should focus on whether the proposal deals unfairly as to the discriminated-against creditor class or classes.

162 B.R. at 512.

Judge Shadur then goes on to adopt much of the reasoning and approach of Judge Ginsberg in *Chapman*, including the requirement of a balancing approach.

> If a plan affording such preferential treatment is to survive scrutiny under the statutory "discriminate unfairly" test, the debtor must place something material onto the scales to show a correlative benefit to the other unsecured creditors—and Debtors have proffered nothing of that nature here.

162 B.R. at 517–518.

District Judge Shadur's conclusions appear to be the majority view on this issue. More important it appears to be the view adopted by the appellate courts in the Ninth Circuit.

In *Sperna*, the Bankruptcy Appellate Panel cited *Chapman* with approval and ruled that the nondischargeable nature of a student loan is not by itself a reasonable basis for discrimination. 173 B.R. at 658. As in *Chapman*, the *Sperna* court rejected the argument that the special provisions for collection of a student loan would justify disparate treatment. "In any case, these factors do not justify effecting a subordination of all other unsecured claims." 173 B.R. at 659 (citing *Chapman* and *McCullough v. Brown* ).

Another appellate court in the Ninth Circuit, this time the District Court for the District of Oregon, has adopted similar views in interpreting the fairness of classification of claims pursuant to 11 U.S.C. § 1322(b)(1). In *In re Smalberger*, 170 B.R. 707 (D.Or. 1994), District Court Judge Frye adopted Bankruptcy Judge Hess' decision which states in relevant part:

> It would seem unfair to tell creditors holding dischargeable claims that other creditors who hold non-dischargeable claims (and who may thus pursue post-bankruptcy collection efforts against the debtor) are to be preferred not only after the bankruptcy case is completed but also during the time payments are being made to creditors. To put it colloquially, receipt of payments under the chapter 13 plan is the only shot at collecting from the debtor for those creditors holding dischargeable claims while student loan creditors may have more than one shot at collection. This fact would seem to argue against allowing a debtor to separately classify non-dischargeable student loan debts for preferential treatment.

*In re Smalberger*, 157 B.R. 472, 475–476 (Bankr.D.Or.1993).

■ It appears that the appellate authority in this circuit holds that a Chapter 13 debtor can not base discriminatory classification upon the fact that the claim favored is nondischargeable in a Chapter 13.

The debtor argues the above cases are distinguishable because they deal with the separate classification of student loans and not criminal fines. The court fails however to see why the principles developed above are not equally applicable, if not more so, when criminal fines are involved. Such fines are intended to punish the criminal, not the criminal's creditors. The whole point of punishment would be avoided if the debtor could transfer the cost of this punishment to his other unsecured creditors.

The debtor also asserts that the decisions in *Sperna* and *Smalberger* are contrary to the appellate authority in our own district, *In re Gonzales*, 172 B.R. 320 (E.D.Wash.1994). In *Gonzales*, District Judge Quackenbush ruled that a nondischargeable child support claim could be separately classified and paid in full in a Chapter 13 in preference to other unsecured claims. Judge Quackenbush based his decision on the strong public policy interest of having child support paid in full. 172 B.R. at 327.[1]

---

1. Judge Quackenbush's opinion in this regard seems particularly prescient. Within a few months after his decision, in the 1994 amendments to the Bankruptcy Code, Congress ratified his view of child support and gave child support obligations a priority status under the Bankruptcy Code. 11 U.S.C. § 507(a)(7). As a result of that priority status, child support claims must now be paid in full during the term of the plan. 11 U.S.C. § 1322(a)(2).

The *Gonzales* case also deals with the question of separate classification of co-signed debt. Although Congress had specifically authorized separate classification of co-signed consumer debt in 11 U.S.C. § 1322(b)(1), Judge Quackenbush ruled that specific provisions must be administered consistent with the purposes of Chapter 13 in such a way as to avoid unnecessary unfairness to the general unsecured debt. *In re Gonzales*, 172 B.R. at 329–330.

The *Gonzales* decision is distinguishable from this case in that it is based on the strong policy in favor of child support obligations and the specific provisions of law authorizing separate classification of consumer co-signed debt. While allowing separate classification in these limited areas, it also emphasizes the need for equality of treatment of general unsecured claims. The *Gonzales* court was not dealing with criminal fines. The policy behind making fines nondischargeable is to ensure that the debtor does not avoid punishment. Clearly that purpose would be avoided if the debtor could shift the cost of his punishment to his innocent creditors. *Gonzales* does not support that result.

This court concludes that a debtor cannot discriminate in favor of a nondischargeable claim in Chapter 13 simply because it is nondischargeable and the debtor wants a "fresh start". "[T]here is nothing in the Code or case law that defines 'fresh start' as the emergence from bankruptcy free of all debt." *In re Sperna*, 173 B.R. at 659.

2. *Whether the debtor can carry out the plan without the proposed discrimination?*

There does not appear to be any reason why the debtor can not carry out the plan without the proposed discrimination. On discharge after completion of the plan the debtor would simply still have a portion of the criminal fine to pay. The rest of his debts, including any fines for civil infractions, would be discharged. As already stated, the debtor's fresh start does not mean that he emerges from the Chapter 13 debt free.

3. *Whether the discrimination is proposed in good faith?*

█   The courts in this Circuit have identified a number of factors which may be of aid in making a determination regarding good faith. *In re Warren*, 89 B.R. 87, 93 (9th Cir. BAP 1988). Of the factors set out in *Warren*, the court finds the following three factors to be particularly important in this case:

1. The extent of preferential treatment between classes of creditors;

2. The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7; and

3. The probable or expected duration of the plan.

The court will discuss the application of these factors as they apply to the facts of this case.

First as to the extent of preferential treatment, the debtors plan funding analysis reflects that the debtor proposes to pay $600.00 for the original criminal fine and $1,840.00 to the remaining general unsecured claims. Although this is three times what is to be paid to the preferred class, it is only 15% of the scheduled claims. Without the preferred classification, all general unsecured creditors would receive 19% of the scheduled claims totaling $12,535.00.[2]

Second, as to type of debt to be discharged, it appears that in addition there are at least $425.00 of civil infraction fines which will be discharged in the debtor's proposed plan which would not be discharged in a Chapter 7.

Third, the debtor has chosen to file a thirty-six month plan. This is the minimum plan duration which can be approved over objection. 11 U.S.C. § 1325(b)(1)(B). The debtor could, if he chose, extend the term of the plan up to five years with court approval. 11 U.S.C. § 1322(d). Thus the debtor's plan is a minimum proposal.

█   Once these factors have been identified and considered, the *Sperna* court gives guidance as to how they should be applied in

---

**2.** This percent will vary depending on the claims allowed in this case. To date there have been $12,560.88 of general unsecured claims filed.

deciding the issue of a debtor's good faith in proposing the separate classification:

> We take guidance from the *Warren* decision, and agree with it that the good faith test should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13. 89 B.R. at 93. We believe an appropriate view of good faith under the *Wolff* test is whether the discrimination involved furthers the goals of the debtor, satisfies the purposes behind Chapter 13 and does not require any creditor or group of creditors to bear an unreasonable burden.

*In re Sperna,* 173 B.R. at 660.

Applying this guidance, the discrimination proposed in debtor's plan furthers his goals; otherwise he would not have proposed it. However, the fact that the discrimination proposed meets the legitimate interests of the debtor is not determinative in itself.[3] *McCullough v. Brown,* 162 B.R. 506 at 511–515.

The court next must determine if the discrimination proposed satisfies the purposes behind Chapter 13. "[W]hile a debtor's fresh start is a strong principle of bankruptcy law, an equally strong principle is the equal treatment and strict prioritization of creditors and claims." *In re Coonce,* 213 B.R. 344, 347 (Bkrtcy.S.D.Ill.1997) quoting *In re Chandler,* 210 B.R. 898, 902 (Bkrtcy.D.N.H.1997). As we have seen the principle of fresh start is not controlling in itself and must be balanced with the principle of equality of treatment. "If a plan affording such preferential treatment is to survive scrutiny under the statutory 'discriminate unfairly' test, the debtor must place something onto the scales to show a correlative benefit to the other unsecured creditors...." *McCullough v. Brown,* 162 B.R. at 517–518.

This requirement of balancing of interests leads us to the third inquiry mentioned by the *Sperna* court, i.e, whether a creditor or group of creditors is being required to bear an unreasonable burden. The debtor's plan proposes to pay a criminal penalty imposed upon him as punishment for criminal activity at the expense of his other innocent creditors. On its face this seems unfair.

Having made the inquiries suggested by the *Sperna* court, it appears that the discrimination proposed is not made in good faith unless it can otherwise be justified. This leads the court to the final question which must be answered in applying the *Wolff* test.

**4. Whether the degree of discrimination is related to the basis for discrimination?**

The Bankruptcy Appellate Panel has paraphrased this test as whether the basis for discrimination demands the degree of preferential treatment proposed. *In re Sperna,* 173 B.R. at 660.

Here the basis for the discrimination is the need for the debtor to obtain reinstatement of his driver's license. This was accomplished when the debtor filed his Chapter 13 proceeding and complied with the state's regulations concerning reissuance of licenses. Debtor's driving privileges presumably will not be revoked again for non payment of outstanding pre-filing fines as long as the debtor remains in Chapter 13. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Thus, the primary purpose of the debtor's filing a Chapter 13 has been accomplished, conditioned upon his successful performance in the Chapter 13 case. There appears to be no limitation as far as the state is concerned as to time of repayment as long as it is consistent with bankruptcy law. The debtor could propose a plan

---

**3.** The question of whether the discrimination proposed furthers the debtor's goals appears to be the least weighty of the three factors offered by the *Sperna* court as guidance. As the court in *McCullough v. Brown* observed:

> Indeed, there is much to be said for a position that the *only* perspective from which the unfairness of a proposed differential in treatment should be evaluated is that of the disfavored class or classes of unsecured claimants. After all, the drafter of the plan decides whom

to favor and whom not to favor in the first instance. Educated self-interest can thus be counted on to avoid any proposal that would operate "unfairly" against the drafter. And so a court's concern, in implementing what has been stated by Congress, should focus on whether the proposal deals unfairly as to the discriminated-against creditor class or classes.

162 B.R. at 512.

See also *In re Smalberger,* 157 B.R. at 475.

over a term of five years consistent with the Bankruptcy Code and still accomplish the purpose of maintaining his driving privileges.

The debtor has options other than the one he has chosen which are less discriminatory as to the general unsecured claimants. The court in *In re Strickland,* 181 B.R. 598 (Bkrtcy.N.D.Ala.1995) describes this option. The debtor could propose a plan that would pay all unsecured claims at the same rate for thirty-six months. Thereafter the debtor could devote all plan payments to the nondischargeable debt. Judge Caddell explained his rationale as follows:

> At first glance, this arrangement may seem to discriminate unfairly. But this is not so. A general unsecured creditor has a right to expect no more than three years of the debtor's disposal (sic) income being used to fund a plan. Any amount beyond this three year period represents a "good faith" effort by the debtor that is not required by the Code. Since the general unsecured creditor has received all he might have expected to receive normally in a Chapter 13 case, the remaining payments under the plan are not being taken away from the general unsecured creditor. After three years the debtor is not required to pay all of his disposable income into the plan.
>
> This Court finds that this method of classifying nondischargeable debts strikes an appropriate balance between the interest of the general unsecured creditors and the debtor.

*In re Strickland,* 181 B.R. at 599.[4] *See also In re Rudy,* 1995 WL 365370 (Bankr. S.D.Ohio 1993) (en banc); *Contra In re Sullivan,* 195 B.R. 649 at 657 (Bankr.W.D.Tex. 1996).

There is no apparent reason why the debtor in this case could not avail himself of this option. Instead he has proposed a plan that pays his nondischargeable criminal fine with money that otherwise would have gone to the unpreferred class of general unsecured creditors. His plan benefits him at the expense of the unsecureds and in doing so improperly subordinates their claims for his benefit. The debtor has placed nothing on the scales to balance this imposition on his unsecured creditors.

The debtor argues that the unsecured creditors are not being harmed because they are receiving more under his proposed plan than they would receive in a Chapter 7 liquidation where they would receive nothing.

This argument fails to recognize that the debtor voluntarily chose to file Chapter 13 with its inherent statutory burdens. Presumably he did so because it was to his advantage.

The filing of a Chapter 13 enabled the debtor to reinstate his driver's privileges immediately without first paying off approximately $1,000.00 worth of fines. This in turn enabled him to retain his job and also enabled him to employ counsel to assist him in processing his bankruptcy case without the necessity of paying all the attorney's fees up front. It appears that the debtor filed Chapter 13 because it afforded him relief which was not available to him in Chapter 7.

On the one hand, having chosen Chapter 13 because it was to his advantage to do so, he cannot on the other hand, argue that the general unsecured creditors are not harmed because they would not receive anything in a Chapter 7.

Judge Shadur in *McCullough v. Brown,* 162 B.R. at 517, answered this argument persuasively as follows:

> More to the point, it is a total non sequitur to move from the premise that *all* unsecured creditors may recover nothing in a Chapter 7 liquidation (so that none of them has a "right" to receive anything specific) to the conclusion that they may "therefore" sustain sharply different treatment—some of them receiving a greater percentage and some receiving a lesser percentage of their debts—if the debtor chooses to follow a different path under

Chapter 13". *Id.* at 777. *Tucker* in turn relied on *In re Brown* which was reversed by *McCullough v. Brown.* This court is persuaded by the reasoning in *McCullough* and adopts it's view on this issue.

---

4. This court relied on *In re Tucker,* 159 B.R. 325 (Bkrtcy.D.Mont.1993) when it stated in *In re Games,* 213 B.R. 773 (Bkrtcy.E.D.Wash.1997) that, "[u]nlike a Chapter 7 liquidation, unsecured creditors have no right to pro rata payment in a

the Code. Chapter 13 carries with it some perceived advantages and some perceived disadvantages in comparison with straight bankruptcy under Chapter 7. What a debtor may not do, consistently with the structure that Congress has created, is to pick and choose among the available options in a way that takes the advantages of one while avoiding the costs that Congress has attached to those advantages.

Having considered all these matters, the court concludes that the debtor's plan is more discriminatory than it needs to be in order to accomplish the debtor's goals. As such it is not proposed in good faith and cannot be confirmed as proposed.

### C. *The Impact of In re Games.*

The trustee objected to the debtor's classification, in part, because the debtor had not proposed a 60 month term, relying on the court's decision in *In re Games*, 213 B.R. 773 (Bkrtcy.E.D.Wash.1997). The court does not adopt this view and finds this interpretation of its decision erroneous for the following reasons.

In *Games*, the debtor had proposed a 49 month plan in order to pay the preferred creditor and in fact could not have successfully completed the plan without extending the plan beyond the 36 month statutory minimum. However, the debtor proposed to pay unsecureds nothing on their claims. In balancing the debtor's need to separately classify the preferred claim against the burden to the discriminated unsecured class, the court found the failure to provide the unsecureds with any compensation on their unsecured claims discriminated unfairly and did not meet the "good cause" standard for extending the plan beyond the 36 statutory minimum pursuant to 11 U.S.C. § 1322(d).

The court recognized in *Games* as it does here that the court cannot force a debtor to extend its plan beyond the 36 month statutory term provided for in 11 U.S.C. § 1322(b)(1)(B). *Games* at 780. But as in *Games*, here too the court must balance the interests of the debtor against the unsecureds in determining whether the classification is proposed in good faith. As already stated, the court finds the debtor has not placed something on the scales to show a correlative benefit to the other unsecured creditors and for that reason the plan is not proposed in good faith. The debtor is left with the choice of dismissing the Chapter 13, converting to a Chapter 7 or extending the plan an additional period to pay the preferred claim. The choice is the debtors.

### IV. *CONCLUSION*

Having considered the evidence introduced and the law applicable the court makes these conclusions:

1. Separate classification of general unsecured claims can not be based solely on the nondischargeable nature of the debt in Chapter 13;

2. The debtor here could carry out a plan without any discrimination against the general unsecured claimants; however, a portion of his nondischargeable debt would survive the discharge;

3. The debtor has options available to him whereby he can accomplish his purpose of satisfying his nondischargeable debt, while assuring all his creditors receive the equal benefit of his disposable income over a thirty-six month period;

4. The plan proposed by the debtor unnecessarily places the cost of paying his criminal penalties on his other unsecured creditors;

5. The balance of interests contained in the debtor's proposed plan unduly and unnecessarily benefits the preferred class and the debtor at the expense of the general unsecured claimants;

6. There are practical options available to the debtor whereby he might remedy the unfair discrimination;

7. Confirmation of the debtor's plan should be denied; and

8. The debtor should be allowed twenty-one days from the date of this decision to file and serve an amended plan. If the debtor fails to act in that time the court may enter an order dismissing the case.

This memorandum opinion will constitute the court's findings of facts and conclusions

of law pursuant to Federal Rules Bankruptcy Procedure 9014 and 7052.