**In re Stacy A. GALLIPO, Debtors.**

**No. 01–03772–R33.**

United States Bankruptcy Court,
E.D. Washington.

Aug. 14, 2002.

Thomas D. Nagle, Yakima, WA, for debtor.

Beverly Benka, Spokane, WA, for Chapter 13 Trustee.

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Bankruptcy Judge.

### Facts.

The debtor, Stacy Gallipo, filed a Chapter 13 petition on May 4, 2000. In her schedules she lists no secured debt, no priority debt and unsecured non-priority debt of $16,895.00. Her assets are limited to personal property valued at $1,600.00. All of the personal property is claimed exempt. Debtor's monthly gross income is $1,635.83 with net take home income of $1,300.00. Her monthly expenses are $1,250.00.

Debtor's plan, as modified,proposes to pay $50.00 per month for 60 months. The plan separately classifies four criminal traffic fines totaling $1,642.00. The separately classified fines are for Driving Under Influence of Intoxicating Liquor or Drugs, RCW 26.61.502, and Driving with License Suspended in the 2nd Degree and 3rd Degree, RCW 46.20.342. These fines will be paid in full during life of the plan. Debtor also separately classifies three shoplifting tickets totaling $1,150.00. Only $158.00 of these fines will be paid during the life of the plan. The total amount of separately classified debt to be paid in the plan is $1,800.00.

The Certificate in Support of Separate Classifications states that separate classification of the traffic fines is necessary so that debtor may have her drivers license restored. This certificate asserts a drivers license is necessary so that the debtor can get to work. It also states that separate classification of the shoplifting fines is necessary because failure to pay may result in incarceration. All of the fines separately classified are nondischargeable.

The total plan payments will be $3,000.00. Of this amount $900.00 will be paid to Debtor's attorney for fees, $1,800.00 will go to the separately classified claims and the remaining $300.00 will be paid to the Chapter 13 Trustee as his statutory fee.

### Issue.

The issue presented is whether a 60 month plan of reorganization which separately classifies criminal fines and results in no payments to the general unsecured creditors unfairly discriminates and thus should not be confirmed.

### Discussion

This Court addressed the issue of separate classification and unfair discrimination under 11 U.S.C. § 1322(b)(1) in *In re Games*, 213 B.R. 773 (Bankr.E.D.Wash. 1997) and *In Re Ponce*, 218 B.R. 571 (Bankr.E.D.Wash.1998). Since these decisions a number of plans proposing to separately classify criminal fines have been confirmed by this Court. The basic structure of those plans has been to provide that the unsecured creditors would receive the equivalent of what they would receive in a 36 month plan and then extend the life of the plan for a sufficient period to pay the separately classified claims in full. This approach has resulted in a number of 60 month plans being proposed.[1]

The law and the practice of law are rarely static and the area of Chapter 13 plans is no exception. The plan proposed by the Debtor has a projected duration of 60 months. The plan however departs from the norm that flowed from *Games* and *Ponce* by proposing to devote 100% of the payments after administrative ex-

---

1. While 60 month plans are the norm in cases with separate classification, in some situations plans have been proposed and confirmed with a life span of less than 60 months.

penses are paid to the separately classified criminal fines. This plan extends the limits of separate classification and nondiscrimination and thus necessitates further review. As in *Games* and *Ponce* the review begins with the test for unfair discrimination set forth in *In re Wolff*, 22 B.R. 510 (9th Cir. BAP 1982). The Bankruptcy Appellate Panel (BAP) in *Wolff* stated the test for determining if a plan unfairly discriminates as follows:

> The test is (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

22 B.R. at 512 [2].

### 1. *Whether the Discrimination has a Reasonable Basis.*

■ The first prong of the *Wolff* test is whether the discrimination has a reasonable basis. In her affidavit the Debtor states that due to unpaid tickets her drivers license was suspended. Upon the filing of a Chapter 13 the Washington State Department of Licensing will reissue a suspended drivers license. Further, the Debtor states that she needs a license so she can drive to work. In oral argument debtors counsel stated that if the criminal traffic fines are not paid prior to discharge the license will be subject to resuspension after the discharge is granted. The debtor has a strong and reasonable motivation for wanting to pay the traffic fines during the term of the present plan. Post completion of this plan, she must drive to reach her place of employment. Another suspension, coupled with the Debtor's continued inabil-

ity to pay the fines could necessitate another Chapter 13 case.

While the debt is nondischargeable, it is the possibility of the license being suspended again which is the motivating factor for separate classification. The Court finds that this is a reasonable basis upon which to discriminate among the unsecured claims.

■ The Debtor also proposes to separately classify the shoplifting criminal fines. The plan as modified provides that these fines will not receive payments until the criminal traffic fines are paid in full. The Debtor is projecting a payment of $158.00 over the life of the plan on these fines. These payments constitute 13.7% of these shoplifting fines and may be paid as late as the last three months of the plan. In her affidavit in support of separate classification the debtor states that if these fines are not paid, she may be subject to incarceration. Although this may technically be true, it seems unlikely that the payment of $158.00, 13.7% of the debt, commencing fifty-seven months after the filing of a plan, would be sufficient inducement for the enforcement agency to forego its incarceration remedy if it was truly considering imprisonment. There is no evidence to support the argument that incarceration of the Debtor is likely if this provision of the plan is not adopted. Thus, it appears that the proposed discrimination in the plan in favor of the shoplifting fines is in reality based on the fact that these fines are not dischargeable. This is not a reasonable basis for discrimination. *In re Sperna*, 173 B.R. 654, (9th Cir. BAP 1994). The Court concludes that the first prong of the *Wolff* test has been met in regards to

---

2. Reliance upon these *Wolff* factors has been generally criticized as is pointed out in Professor Sepinuck's excellent article *Rethinking Unfair Discrimination in Chapter 13*, 74 Am. Bankr.L.J., 341, 354–359 (2000). However, this test was adopted by the Bankruptcy Appellate Panel of the Ninth Circuit and is generally followed in the Ninth Circuit.

the separate classification of the criminal traffic fines but not as to the criminal shoplifting fines.

### 2. Whether the Debtor Can Carry Out a Plan without the Discrimination.

■ The second prong of the *Wolff* test is whether the debtor can carry out *a* plan without the discrimination.[3]

A Chapter 7 would discharge all of the Debtor's debt except the fines.[4] The debtor has no non-exempt assets and thus no distribution would be made upon any claim. At the conclusion of the Chapter 7 case the Debtor would remain liable for $8,067.92, the nondischargeable civil and criminal fines.

If this Debtor proposed a nondiscriminatory thirty-six month plan it would reduce the nondischargeable criminal fines by only $95.79, leaving a balance of $3,696.19 remaining due and owing post plan completion. A 60 month nondiscriminatory plan would reduce the nondischargeable criminal fines by $239.54, leaving a balance of $3,552.46 of nondischargeable criminal fines. In the proposed plan the criminal traffic fines will be paid in full leaving the criminal shoplifting fine balance at $992.00.

A nondiscriminatory 36 month plan is of little benefit to the debtor since she will likely lose her license upon discharge and be subject to the possibility of incarceration for non payment on the criminal theft fine. There is scant improvement in a five year plan and an equally high likelihood of loss of license and possibility of incarceration. The Debtor could file a Chapter 7 followed by a Chapter 13, but this would have no positive effect upon the general unsecured creditors. The transactional costs of the initial Chapter 7 would benefit only the attorney filing the case and the court for the additional filing fee, not the creditors. Even then a nondiscriminatory 13 Plan would not avoid the necessity of a follow on 13, after completion of the first Chapter 13 case, to maintain the Debtor's driving privileges. This course of action would require three bankruptcy cases to insure relief for the Debtor.

It does not appear possible for the Debtor to propose a plan which will provide her meaningful relief without some discrimination.

### 3. Whether the Discrimination is Proposed in Good Faith.

■ The third prong of the *Wolff* test is whether the discrimination is proposed in good faith. The Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals in *In re Warren*, 89 B.R. 87, 89 (9th Cir. BAP 1988) identified several factors which can be used in determining whether a plan is proposed in good faith. The application of the factors is done on a case by case basis. Once the critical factors have been identified, they must be applied. The court in *In re Sperna*, 173 B.R. 654, 660 (9th Cir. BAP 1994) discussed application of the *Warren* factors:

> We take guidance from the *Warren* decision, and agree with it that the good faith test should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13. 89 B.R. at 93. We believe an appropriate view of good faith under the *Wolff* test is whether the discrimination

---

**3.** In reviewing its opinions in *Games* and *Ponce* the Court has noted that it misquoted the second prong of the *Wolff* test by inserting "the" for "a" so that it read "whether the debtor could carry out the plan without the proposed discrimination."

**4.** Fines, whether civil or criminal in nature are not generally discharged under Chapter 7. 11 U.S.C. § 523(a)(7); *In re Games*, 213 B.R. 773 at 776 (Bankr.E.D.Wash.1997).

involved furthers the goals of the debtor, satisfies the purposes behind Chapter 13 and does not require any creditor or group of creditors to bear an unreasonable burden.

173 B.R. at 660.

After reviewing the *Warren* factors and taking into account the posture and facts of this case, the Court concludes that the following *Warren* factors are applicable in this case:

1) The amount of the proposed payments and the amount of the Debtor's surplus; ...

3) The probable duration of the plan; ...

5) The extent of preferential treatment between classes of creditors; ...

7) The type of debt sought to be discharged, and whether such debt is nondischargeable in Chapter 7; ...

8) The existence of special circumstances ...

...

(89 B.R. at 93).

With these admonitions in mind, we turn to the application of the relevant *Warren* factors to the facts of this case:

(a) *The amount of the proposed payments and the amounts of the Debtor's surplus.*

The Debtor's monthly net take home income is $1,300.00. Her monthly expenses are $1,250.00. Her proposed plan payment is $50.00 per month. There is no surplus.

(b) *The probable or expected duration of the plan.*

The Debtor's proposed plan is for sixty months, the maximum term of a Chapter 13 plan.

(c) *The extent of the preferential treatment between classes of creditors.*

After costs of administration, the Debtor's plan proposed to pay her criminal traffic fines in full prior to all the other creditors. Once those criminal traffic fines are paid in full, the Debtor proposes to pay the balance of the remaining payments over the plan's term to the shoplifting fine. The amount paid on the shoplifting fine would be $158.00.

The plan prefers the class of criminal traffic fines. The court has already determined that the preference for this class is reasonable because of its critical relationship to maintaining debtor's essential driving privileges. This discrimination is in good faith.

The proposed preferential treatment for the shoplifting fines is more problematic. This favored treatment is not justified on the basis of probability of incarceration if payments are not made on these fines. It is exceedingly unlikely that the enforcement agency would forego its option to imprison, for the token payment provided in this plan fifty-seven months in the future. If the enforcing agency, chooses not to imprison the Debtor, it is unlikely it is because of its favorable treatment in the Debtor's plan but rather for some other reason. This conclusion is reinforced by the fact that the Debtor is also liable for payment of a felony fine for which the debtor has not sought favorable treatment. Evidently incarceration for that felony fine does not depend on favorable treatment by the debtor in her plan.

■ Since incarceration seems unlikely for the shoplifting fines, it appears that the only reason the debtor wishes to treat them more favorably is because they are nondischargeable in a Chapter 13 case. The mere fact that an obligation is not dischargeable is not a basis for discrimination in its favor in a Chapter 13 plan. *In re Ponce*, 218 B.R. 571, at 576 (Bankr. E.D.Wash.1998). The debtor's proposed

preferential treatment of the shoplifting fines in her plan is not in good faith.

(d) *The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7.*

Given the Debtor's grim financial situation it is evident that her filing of a Chapter 7 would not be subject to challenge as a "substantial abuse" of the system. 11 U.S.C. 707(b). However, a number of her debts would not be dischargeable in such a Chapter 7 case. These nondischargeable debts are the Debtor's fines, both criminal and civil.

The Debtor's proposed plan, if successfully completed, in addition to discharging of all the debts dischargeable in a chapter 7 would result in a discharge of the debtor's civil fines. This is part of the "super discharge" provided upon successful completion of a Chapter 13 plan. 11 U.S.C. 1328(a). This class of non-compensatory civil fines bears the brunt of the plan's discrimination, since these claims would get a pro rata distribution with the other general unsecured claims in a non discriminatory Chapter 13. They of course would not be discharged in Chapter 7. Thus the question arises does this discrimination against them constitute lack of "good faith"?

Congress when promulgating the provisions of Chapter 13, did not require that creditors holding obligations for civil fines receive anything in a Chapter 13 plan. For example, it is possible for a debtor to structure a Chapter 13 plan which only makes payments to the debtor's secured creditors. If that plan was successfully completed, creditors holding claims for civil fines would find that their claims were discharged although they have received no distribution on their claims. If debtors are allowed to successfully structure plans like that, should it not be possible to struc-

ture a plan which would enable the debtor to preserve her ability to be gainfully employed? Such a plan fits within the statutory structure and purposes of Chapter 13.

Finally the court turns to the question posed in *Sperna* as to whether the debtor's plan requires any creditor or class of creditors to bear an unreasonable burden. The Gallipo plan, provides that the debtor's criminal traffic fines will be paid first and in full. This is done to the detriment of the general unsecured creditors. Criminal traffic fines are general unsecured claims which in a nondiscriminatory plan would be paid pro rata along with the rest of the general unsecured claims. The discrimination in this plan arises because the general unsecured creditors will receive nothing while the criminal traffic fines will be paid in full. The discrimination in Debtor's proposed plan is based on the debtor's need to have her driving privileges permanently reinstated. This will insure her continued ability to earn a living, which in turn is essential to her ability to repay any of her obligations. This discrimination in favor of the criminal traffic fines is reasonable and necessary and thus is not unduly burdensome on the debtor's other creditors and is made in good faith.

However, the debtor's proposed discrimination in favor of the criminal shoplifting fines is not necessary to assure Debtor's ability to earn a living, given the unlikelihood that these fines will be enforced by incarceration. Therefore, there is no necessity for this discrimination against the other unsecured creditors. As a result it is unduly burdensome on the other unsecured creditors in the case and accordingly the court finds this discrimination in favor of the shoplifting fines not in good faith and therefore impermissible.

(e) *The existence of special circumstances.*

Here the debtor's need to insure permanent reinstatement of her driving privi-

leges and thus maintain her ability to be gainfully employed are special circumstances which justify the proposed discrimination.

The court concludes, that applying the good faith factors discussed in *Warren* with the methodology suggested by *Sperna,* that the debtor's proposed classification of claims is in good faith as to the criminal traffic fines but not in good faith as to the shoplifting fines.

4. *Whether the Degree of Discrimination is Directly Related to the Basis or Rationale for the Discrimination.*

The fourth element of the *Wolff* test is whether the degree of discrimination is directly related to the basis or rationale for the discrimination. "Restating the last element, does the basis for the discrimination demand that this degree of differential treatment be imposed?" *In re Wolff,* 22 B.R. at 511. As discussed previously, the debtors primary purpose for the discrimination is not the payment of nondischargeable debt but the restoration and retention of driving privileges. This is evidenced by her focus on the criminal traffic fines, to the virtual exclusion of payments on the nondischargeable criminal shoplifting debt. Without the discrimination, the debtor gains nothing that she would not have received in a Chapter 7. However, the discrimination in favor of the shoplifting fine does not appear directly related to the basic need upon which the plan is premised. There does not appear an acceptable rationale which requires the discrimination in favor of the criminal shoplifting fines.

## Conclusion

All four elements of the *Wolff* test are not satisfied by the Debtor's Plan. The debtor's plan unfairly discriminates amongst the unsecured creditors. Accordingly, the Debtors plan should not be confirmed. The debtor however may, if she chooses, modify her plan consistent with this decision.